2007 ND 49

**Rhonda Rene LORENZ, Plaintiff and Appellant**

v.

**Mark Andrew LORENZ, Defendant and Appellee.**

No. 20060068.

Supreme Court of North Dakota.

April 10, 2007.

Paul M. Probst, Probst Law Firm, Minot, ND, for plaintiff and appellant.

Robert S. Thomas, Thomas & Thomas, Minot, ND, for defendant and appellee.

CROTHERS, Justice.

[¶ 1] Rhonda Lorenz appeals from a judgment granting her a divorce from Mark Lorenz, dividing the parties' marital estate, denying her request for spousal support, awarding her custody of the parties' minor child, and granting Mark Lorenz visitation. By this opinion and that of the Chief Justice, we affirm that portion of the judgment distributing the property and debt of the parties. By Justice Maring's opinion and the concurrence of Justice Kapsner and the Chief Justice, we reverse that portion of the judgment denying spousal support and remand to the trial court for the purpose of awarding temporary spousal support.

I

[¶ 2] Rhonda and Mark Lorenz were married in April 1994 and have one child together. Rhonda Lorenz has another child from a previous marriage, and that child lived with the parties during their marriage. Mark Lorenz served in the United States Air Force during the marriage and was stationed at the Minot Air Force Base. Rhonda Lorenz also served in the Air Force, but left the service, and began pursuing a medical degree studying in Grenada, England, and other locations outside of Minot. She completed her degree in 2004 and returned to Minot.

[¶ 3] In September 2004, Rhonda Lorenz sued Mark Lorenz for divorce. After a trial, the court granted the parties a divorce, awarded Rhonda Lorenz custody of the parties' child, granted Mark Lorenz visitation, and divided the parties' marital estate. The court established a visitation schedule and ordered the parties to equally share the visitation transportation expenses if they resided more than 60 miles apart. The court valued the parties' marital assets at approximately $213,824 and their marital debt at $448,649. The court awarded Rhonda Lorenz $136,824 in marital property, including the parties' Minot home, and apportioned her $402,045 of the marital debt, including $250,000 for her medical school loans and the first and second mortgages on the Minot home. The court awarded Mark Lorenz $77,000 in marital property, including the parties' interest in a house Mark Lorenz had inherited from his mother in Lewiston, Idaho. Mark Lorenz was allocated $46,288 of the parties' marital debt. Mark Lorenz received a net award of $30,712, and Rhonda Lorenz received a net award of negative $265,221. The court ordered Mark Lorenz to pay Rhonda Lorenz $2,000 per year for five years to more equalize the property award. The court denied Rhonda Lorenz's request for an equitable share of Mark Lorenz's military retirement pension and denied Mark Lorenz's request for an equitable share of Rhonda Lorenz's military pension if she returned to military service. The court denied each party's request for spousal support.

## II

[¶ 4] Rhonda Lorenz argues the district court's property division is clearly erroneous because it is inequitable, the court treated her medical school loans as separate personal debt, and the court did not consider Mark Lorenz's military retirement pension as marital property. Rhonda Lorenz also claims the court incorrectly allocated the Lewiston, Idaho, residence to Mark Lorenz, and contends insufficient evidence supports the court's finding there is a mortgage on the Lewiston property.

[¶ 5] "We review a district court's determinations regarding the division of property as findings of fact, and we will not reverse unless the findings are clearly erroneous." *Dvorak v. Dvorak,* 2005 ND 66, ¶ 20, 693 N.W.2d 646. " 'A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction a mistake has been made.' " *Kostelecky v. Kostelecky,* 2006 ND 120, ¶ 8, 714 N.W.2d 845 (quoting *Olson v. Olson,* 2002 ND 30, ¶ 7, 639 N.W.2d 701). " 'A [district] court's findings of fact are presumptively correct, and we view the evidence in the light most favorable to the findings.' " *Striefel v. Striefel,* 2004 ND 210, ¶ 8, 689 N.W.2d 415 (quoting *Reineke v. Reineke,* 2003 ND 167, ¶ 12, 670 N.W.2d 841).

[¶ 6] The district court must ascertain the value of the marital estate after including all of the parties' assets and debts, whether obtained separately or inherited. *Steckler v. Steckler,* 519 N.W.2d 23, 25 (N.D.1994). After all assets and debts have been included in the marital estate, the court applies the *Ruff–Fischer* guidelines to equitably distribute the property. *Ulsaker v. White,* 2006 ND 133,

¶ 10, 717 N.W.2d 567. The *Ruff–Fischer* guidelines include:

> The respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material. The [district] court is not required to make specific findings, but it must specify a rationale for its determination.

*Id.* The property division does not need to be equal to be equitable and a substantial disparity must be explained. *Brandner v. Brandner,* 2005 ND 111, ¶ 7, 698 N.W.2d 259. Generally, a long-term marriage supports an equal division of the marital estate, but economic fault and a party's dissipation of assets can be relevant factors to consider. *Id.*

[¶ 7] The district court found the parties' marital property was worth $213,824. The court awarded Rhonda Lorenz $136,824 in property, which included the parties' Minot home worth $110,000, vehicles, household goods, and financial assets. The court awarded Mark Lorenz $77,000 in property, including the parties' interest in the Lewiston, Idaho, property worth $45,000, vehicles, household goods, and financial assets. The court's findings addressed the parties' marital debt:

> The parties have accumulated significant debt totaling some $448,649. Of this total debt, $250,000 is Rhonda's medical school loans, which Rhonda has agreed it's equitable that this debt should be apportioned to her. The Court concurs. This still leaves $198,649 of debt to be equitably appor-

tioned between the parties. The parties agree that some of the accumulated credit card debt was for living costs and other expenses relating to Rhonda's medical school education. However, there was no breakdown as to what amount of credit card debt was directly related to Rhonda's education and what was for other purposes. In apportioning this $198,649 of debt, the Court took into account that at present, the parties are earning about the same gross monthly income. While Mark also receives certain military subsistence income, those sums may be reduced because of the divorce process. The Court further took into account that Mark will have a child support payment obligation of $781 per month. Finally, the Court also took into consideration that while the parties' incomes are close now, it is more likely than not that as Rhonda continues in the medical profession, her income will increase significantly. While Mark's income may also increase, it is more likely than not that Rhonda's income will rise more quickly and to higher levels than Mark's in the future.

The evidence was that the parties' second mortgage from Homecoming Financial on the marital residence property was used to pay off some of both Rhonda's educational costs and expenses and other marital expenses and debt. The Court finds it equitable that Mark equally share in such debt. However, because this debt is against the marital residence awarded to Rhonda, this debt will be apportioned to Rhonda; and Mark will be apportioned the $15,492 debt on the AT & T Universal Card (which sum is approximately one-half of the balance on the second mortgage of the marital residence).

The Court finds that the total accumulated marital debt of the parties is 4448,-649 [sic].

The amount of such debt apportioned to Rhonda: $402,045.00*

The amount of such debt apportioned to Mark: $46,288.00

*The $402,045 apportioned to Rhonda includes the $250,000 of her medical school loans, which both parties and the Court, under the facts of this case, agree should be the sole responsibility of Rhonda.

Mark Lorenz received a net award of $30,712, and Rhonda Lorenz received a net award of negative $265,221. The court's findings explained the unequal distribution:

Even taking into account the support Mark gave Rhonda so that she could pursue her medical education, such as financial support, and that Mark solely provided for their child ... and Rhonda's child ... for several years in Rhonda's absence, which is difficult to place a money value on, the Court believes that it is equitable that there be an adjustment to account for this substantial difference.

The court identified a difference of $30,712 between the parties' net property awards, after excluding the $250,000 medical school loans allocated to Rhonda Lorenz, and ordered Mark Lorenz to pay Rhonda Lorenz $2,000 per year for five years to make the property distribution equitable.

A

■ [¶ 8] Rhonda Lorenz claims the district court treated her student loan debt as personal debt and not marital debt, and therefore the court's findings were made under an erroneous view of the law. She argues there is no evidence to support the court's finding that she unconditionally agreed to assume the student loan debt.

[¶ 9] We must understand the basis for the district court's decision before we can

decide whether the findings of fact are clearly erroneous. *In re Griffey*, 2002 ND 160, ¶ 8, 652 N.W.2d 351. The district court must adequately explain the basis for its decision, but "we will not reverse a district court's decision when 'valid reasons are fairly discernable, either by deduction or by inference.'" *In re Spicer*, 2006 ND 79, ¶ 8, 712 N.W.2d 640 (quoting *Griffey*, at ¶ 8).

[¶ 10] Relying on *Brandner*, 2005 ND 111, 698 N.W.2d 259, Rhonda Lorenz claims the district court did not include her medical school loans in the marital estate and, therefore, the court misapplied the law. In *Brandner*, we said the district court misapplied the law when it treated a spouse's business debts as "non-marital debts." *Id.* at ¶¶ 10–11. This case is different from *Brandner*. Here, the district court found the parties' marital debt totaled $448,649, which included $250,000 for Rhonda Lorenz's school loans. The court included the student loans in the parties' marital estate and considered the loans in the property distribution. Although the district court did not include the student loans in its mathematical worksheet, we can fairly discern from the court's decision that the loan amounts were not included in the equitable adjustment because the court had already addressed the debt and why it allocated the loans to Rhonda Lorenz.

[¶ 11] The court allocated the student loan debt to Rhonda Lorenz after finding she agreed at trial to be responsible for the student loans and the first mortgage on the home. Rhonda Lorenz confirms she agreed to be responsible for the student loan debt and the first mortgage, but that the agreement was contingent on receiving $2000 per month spousal support and Mark Lorenz paying all the other debt. She argues that the district court clearly erred by citing her agreement to assume the debt because the court did not award her spousal support or allocate the other debt to Mark Lorenz.

[¶ 12] We agree the district court erred when it mischaracterized the nature of Rhonda Lorenz's agreement. However, we do not agree the mistake made the court's findings clearly erroneous.

[¶ 13] The student loans are the majority of the debt awarded to Rhonda Lorenz, which made the property distribution unequal. The court made other findings about allocating the debt and explained the unequal distribution. "A [district] court may consider which of the parties has incurred particular debts, and the purposes for which those debts were incurred, in determining an equitable allocation of the responsibility for repayment, but those debts nevertheless remain a part of the marital estate." *Brandner*, 2005 ND 111, ¶ 10, 698 N.W.2d 259. Under the *Ruff–Fischer* guidelines, both economic and non-economic fault are factors that may be considered in dividing the marital estate. *Heinz v. Heinz*, 2001 ND 147, ¶ 5, 632 N.W.2d 443. The court found the parties took out a loan secured by a second mortgage on the marital residence and incurred credit card debt to fund Rhonda Lorenz's education.

[¶ 14] Rhonda Lorenz claims it is inequitable for her to be responsible for repayment of the loan secured by the second mortgage and the credit card debt because some of that money was used for dependant care in Minot. Review of the record shows that the credit cards were used solely by Rhonda Lorenz and that any other dependant care money paid for part, but less than all, of the children's tuition expenses, including that of the child for whom Mark Lorenz had no legal obligation to support.

[¶ 15] Rhonda Lorenz's decision to obtain a medical degree and the second

mortgage and credit card debt she incurred while obtaining the degree were largely responsible for the parties' sizable debt. A small portion of that debt was sent home to pay for the children's private school tuition. The court found Rhonda Lorenz's income was likely to increase substantially in the future, while Mark Lorenz was about to retire and his income was not expected to increase greatly. Rhonda Lorenz has a greater ability to pay back the debt she incurred. In contrast, Mark Lorenz did not incur most of the debt and will not benefit from Rhonda Lorenz's education. We therefore conclude that even though the district court misapprehended Rhonda Lorenz's agreement to assume the student loan debt, the court's debt allocation is not clearly erroneous.

### B

■ [¶ 16] Rhonda Lorenz argues the district court's finding that she was earning approximately the same monthly income as Mark Lorenz is clearly erroneous because she was unemployed at the time of the trial. She claims the court incorrectly relied on that finding in distributing the parties' marital estate.

■ [¶ 17] Although Rhonda Lorenz was unemployed at the time of the trial, she testified she had received an offer of employment as a first-year resident in the Minot area, specializing in family practice and earning approximately $41,000 per year for the first year. Evidence was also presented that the average salary for a family practice physician in the Minot area is approximately $120,000. Under the *Ruff–Fischer* guidelines, the court may consider the parties' earning abilities when distributing their marital estate. Although Rhonda Lorenz had not yet formally accepted the offer of employment by the time of the trial, the offered salary was evidence of her earning ability. It was appropriate for the district court to consider Rhonda Lorenz's earning abilities when distributing the marital estate, and the court's findings are not clearly erroneous.

### C

■ [¶ 18] Rhonda Lorenz claims the district court's decision is clearly erroneous because the court did not include Mark Lorenz's military pension in the marital estate. She claims the court should have divided his pension.

■ [¶ 19] Retirement benefits are marital property that must be included in the marital estate and are subject to equitable distribution. *Striefel,* 2004 ND 210, ¶ 10, 689 N.W.2d 415. "[T]he [district] court has an affirmative duty to determine the value of the marital estate and distribute the property of the parties equitably." *Anderson v. Anderson,* 504 N.W.2d 569, 571 (N.D.1993). The *Ruff–Fischer* guidelines cannot be applied until after the court has established the net worth of the parties' property, if sufficient evidence has been admitted. *VanRosendale v. VanRosendale,* 333 N.W.2d 790, 791 (N.D.1983). "If the court fails to determine net worth when sufficient evidence is before the court, 'a manifest abuse of discretion exists.'" *Id.* (quoting *Hoge v. Hoge,* 281 N.W.2d 557, 561 (N.D.1979)).

[¶ 20] Here, the parties each requested a portion of the other's military pension. Mark Lorenz's pension was vested but the amount he would receive was not known at the time of trial because he had not retired. Rhonda Lorenz's pension was not vested but her prior time in service would count for future military pension benefits if she rejoined the military. The district court included Mark Lorenz's military pension in the property distribution and awarded it to him. The district court did not and could not determine the value of the pension because neither party offered

that evidence. The court therefore did not include the value of either pension in the property distribution calculations.

[¶ 21] In this case the benefits were included in the estate, but the parties' failure to present evidence of a present value prevented the court from doing more. On appeal a party cannot complain about error that is of their own making. *See State v. Klose*, 334 N.W.2d 647, 651 (N.D.1983). The court did not have evidence about the present value of Mark Lorenz's pension, and therefore the court did not err in failing to include its value in the marital estate.

[¶ 22] We have said if the parties in a divorce action cannot agree upon the present value of a retirement account it may be necessary to divide the future benefits using a formula that equally allocates the risks and benefits of the retirement. *Bullock v. Bullock*, 354 N.W.2d 904, 908–09 (N.D.1984). But, use of a formula to distribute a retirement pension only provides a substitute means of division when the value is not known. Here, alternate methods for division are not relevant because the court awarded the pension to Mark Lorenz.

[¶ 23] The district court rejected using a formula to distribute Mark Lorenz's pension and instead found it would be equitable to award the entire pension to him:

As of the hearing in this matter, the parties had been married about 11 years. For just about five years between the years 2000 through most of 2004, Rhonda was gone from the marital home pursuing her medical education in Granada [sic] England, and other places. While she was gone, Mark remained in the marital home caring for both their child ... and Rhonda's child ... as well as financially assisting Rhonda with her living and some medical education related expenses. In truth, except for the first few years of their marriage when both parties were in the service, Mark did more promoting of Rhonda's professional career development than she did promoting his military service career. Therefore, the Court denies Rhonda's request for an equitable share of Mark's military retirement.

. . . .

The fact is, Mark should have a reasonable retirement from the military; and Rhonda should likewise have sufficient time to establish her own reasonable retirement pension, whether it be from further military service or from the private practice of medicine. This, the Court believes is equitable for both parties.

[¶ 24] The record shows the court included the pension in the marital estate and made findings addressing its distribution. The court's findings are supported by the evidence, and we are not left with a definite and firm conviction a mistake has been made. We conclude the court's findings are not clearly erroneous.

### D

[¶ 25] Rhonda Lorenz claims the district court erred in awarding Mark Lorenz the parties' interest in the Lewiston, Idaho, residence. She claims that the court failed to include that residence in the parties' marital estate and that there was insufficient evidence of a mortgage on the residence.

[¶ 26] Mark Lorenz testified he and his brother inherited the Lewiston residence from his mother and he has a one-half share in the property. Property acquired by gift or inheritance must be included in the marital estate and is subject to distribution. *Ulsaker*, 2006 ND 133, ¶ 12, 717 N.W.2d 567. The district court's decision reflects that the court in-

cluded the parties' interest in the residence in the marital estate and awarded it to Mark Lorenz. We conclude the court did not misapply the law.

[¶ 27] Rhonda Lorenz claims there is insufficient evidence of a mortgage on the Lewiston property, and therefore there is not sufficient evidence that Mark Lorenz's property award will be offset by this debt. During trial, Mark Lorenz testified there is a $15,000 mortgage on the Lewiston residence. He also testified he did not have additional evidence of the mortgage with him because his brother has the mortgage. Rhonda Lorenz testified there is not a mortgage on the Lewiston residence. The court found there is a $15,000 mortgage on the property and allocated the debt to Mark Lorenz. Although there is conflicting testimony about the existence of a mortgage on the Lewiston residence, "[a] choice between two permissible views of conflicting evidence is not clearly erroneous." *Barth v. Barth*, 1999 ND 91, ¶ 13, 593 N.W.2d 359. The court's findings on the Lewiston residence are not clearly erroneous.

### E

[¶ 28] Although the property division is not equal, the district court adequately explained the disparity. The evidence supports the district court's findings and property division, and we are not left with a definite and firm conviction a mistake has been made. We conclude the district court's property division is not clearly erroneous, and we affirm the distribution.

### III

[¶ 29] Rhonda Lorenz argues the district court erred in denying her request for spousal support. She claims she is burdened by the expenses she incurred rehabilitating herself and argues those expenses should be offset by temporary spousal support.

[¶ 30] Both Rhonda and Mark Lorenz sought spousal support. The district court denied both parties' requests:

The Interim Order provided that Mark pay temporary spousal support to Rhonda in the sum of $700 per month, and to pay $1,000 toward Rhonda's legal fees. This was basically because at the time of the Interim Order, Rhonda, while having applications out for a residency appointment, was not employed, and her income was the child support for her child [from a previous marriage]. However, as of the trial in this matter, Rhonda testified that she had received a residency offer ... with a gross monthly income of about $3,448 per month. There was some evidence that Rhonda's residency income would likely increase with each year's successful completion; and thereafter, her income should increase significantly.

Mark has a very successful military career with a gross monthly income, not counting his military subsistence and BAH benefits, of about $4,000.

In point of fact, it does not appear to the Court that either party has been disadvantaged to the point of necessitating awarding either party temporary or permanent spousal support; and the Court declines to do so. Mark's temporary spousal support obligation of $700 per month to Rhonda, pursuant to the Interim Order, shall end with his October 2005 payment.

[¶ 31] The decision whether to award spousal support is a finding of fact and will not be set aside on appeal unless it is clearly erroneous. *Kostelecky*, 2006 ND 120, ¶ 14, 714 N.W.2d 845. In deciding whether to award spousal support, the court must consider the relevant factors under the *Ruff–Fischer* guidelines. *Id.* A

separate finding that a spouse is "disadvantaged" is no longer necessary to award spousal support. *Sack v. Sack*, 2006 ND 57, ¶ 11, 711 N.W.2d 157. The district court's findings in this case were issued before *Sack*, and therefore the court made findings about whether either spouse was disadvantaged.

[¶ 32] Relying on *Lohstreter v. Lohstreter*, 1998 ND 7, ¶ 24, 574 N.W.2d 790, Rhonda Lorenz claims she is entitled to spousal support because she rehabilitated herself during the marriage. In *Lohstreter* we reversed a district court's decision not to award Kathy Lohstreter spousal support after the court concluded she was not a disadvantaged spouse because she was close to graduating with a nursing degree. *Id.* at ¶ 23. We concluded the court's decision was clearly erroneous because Kathy Lohstreter was burdened with family debts from her husband's financial irresponsibility, she was responsible for her own education debts, she was 42 years old and had never had significant employment outside the home, and spousal support was critical because there was no other property to distribute to equalize the burdens and disadvantages of the marriage. *Id.* We also said that because she rehabilitated herself, she should receive some rehabilitative spousal support to help her retire her educational debt and embark on employment, particularly because the cost of becoming self-supporting was not equitably shared by her former spouse. *Id.* at ¶¶ 24–25.

[¶ 33] This case is different from *Lohstreter*. Rhonda Lorenz was employed in the military before she decided to attend medical school, and it is not clear that she would have been entitled to rehabilitative spousal support if she had not gone to medical school and obtained her degree, while Kathy Lohstreter was not employed outside of the home before she went to

school for her nursing degree. *Id.* at ¶¶ 26–27. Here, Rhonda Lorenz's decisions about her education significantly contributed to the parties' financial situation, and in *Lohstreter* the husband's alcohol abuse and overspending led to the parties' unstable financial situation. *Id.* at ¶ 18. Moreover, Rhonda Lorenz had received an offer of employment with a set salary at the time of the divorce trial, and although Kathy Lohstreter was close to completing her education, she was not yet employed and it was not certain what her income would be when she obtained employment.

[¶ 34] The district court here considered the *Ruff–Fischer* factors, specifically the parties' earning abilities, and concluded neither spouse was entitled to spousal support. The court considered Rhonda Lorenz's income based on the employment offer and the likelihood that her income would increase significantly in the future. We conclude the court's findings about spousal support are supported by the evidence and, therefore, are not clearly erroneous.

## IV

[¶ 35] Rhonda Lorenz argues the district court's decision requiring the parties to equally share transportation expenses incurred when the parties' child visits Mark Lorenz is clearly erroneous, because it places an excessive financial burden on her.

[¶ 36] A district court's decision on visitation is a finding of fact which will not be reversed on appeal unless it is clearly erroneous. *Berg v. Berg*, 2000 ND 36, ¶ 18, 606 N.W.2d 895. Assessment of transportation expenses is part of the broader issue of visitation and custody and we apply the same standard of review. *Id.*

[¶ 37] Mark Lorenz testified he was contemplating moving to Lewiston, Idaho,

after he retired from the military. The divorce judgment requires the parties to equally share the visitation transportation expenses if the parties reside in separate states and more than 60 miles from each other.

[¶ 38] Relying on *Berg,* 2000 ND 36, 606 N.W.2d 895, Rhonda Lorenz claims she should not be required to pay half the transportation expenses because it places an excessive financial burden on her. In *Berg,* however, we affirmed a district court's decision to require the father to transport the children for visitation and pay all transportation expenses due to the mother's financial circumstances and the father's attempts to demean the mother's reputation in the community, which made it difficult for the mother to return to the community for visitation. *Id.* at ¶ 19. Rhonda Lorenz has not cited, and we have not found, a decision where this Court has reversed a district court order requiring parents to equally share transportation expenses due to an excessive financial burden on one parent. We decline to do so in this case. The district court's decision was not based on an erroneous view of the law, there is evidence to support it, and we are not left with a definite and firm conviction a mistake was made. We conclude the court's decision is not clearly erroneous.

[¶ 39] DANIEL J. CROTHERS

MARING, Justice, concurring in part and dissenting in part.

[¶ 40] I concur in part IV and, respectfully, dissent to parts II and III of the majority opinion. I believe the trial court clearly erred in dividing the parties' marital estate and failing to award Rhonda Lorenz spousal support. Therefore, I would reverse and remand for the trial court to reconsider the division of the marital estate, including division of the debt, Mark Lorenz's military retirement pension, and an award of spousal support.

[¶ 41] "Courts generally start with the view that marital property should be divided equally, and although the division need not be exactly equal to be equitable, the trial court must explain any substantial disparity." *Brandner v. Brandner,* 2005 ND 111, ¶ 7, 698 N.W.2d 259. An explanation must be sufficient to understand the trial court's rationale for the substantial disparity. *See Ulsaker v. White,* 2006 ND 133, ¶ 18, 717 N.W.2d 567.

[¶ 42] The majority concludes the trial court did not clearly err in its division of the marital debt even though the trial court mischaracterized the nature of Rhonda Lorenz's agreement to pay her student loan debt. The trial court held:

The court allocated the student loan debt to Rhonda Lorenz *after finding she agreed at trial to be responsible for the student loans and the first mortgage on the home.* (Emphasis added.)

[¶ 43] However, on direct examination during the divorce trial, Rhonda Lorenz testified that she would take her student loans and the first mortgage provided she was awarded the home in Minot and provided she was awarded spousal support from Mark Lorenz at $2,000 per month for one year.

[¶ 44] Rhonda Lorenz testified that she would be required to start paying back her student loans at the rate of $1,900 per month in August 2005. Based on this testimony, the trial court, in its October 21, 2005, findings and order for judgment, found: "The parties have accumulated significant debt totaling some $448,649.[1] Of

---

1. On January 18, 2006, the trial court entered an order amending findings and order for judgment, finding it had "made an arithmetic mistake, and the parties' total marital debt

this total debt, $250,000 is Rhonda Lorenz's medical school loans, which Rhonda Lorenz has agreed it's equitable that this debt should be apportioned to her. The Court concurs." The trial court did mischaracterize Rhonda Lorenz's testimony to mean she was willing to be responsible for the entire medical school loan debt without assistance from Mark Lorenz. Rhonda Lorenz's willingness to be responsible for the medical school loan debt was clearly based on her belief that Mark Lorenz would provide spousal support until her expected earning potential from the medical education began. I do agree that this mischaracterization of Rhonda Lorenz's testimony does not make the trial court's allocation of the student loan debt to her clearly erroneous. However, having made this decision, the trial court failed to adequately explain the huge disparity in its division of the remaining marital estate. Even without consideration of the medical school debt of $250,000, the remaining net equity assigned to Mark Lorenz is $30,712 (*plus* a pension of undetermined value), while Rhonda Lorenz received a negative $15,221 (plus $2,000 per year for five years with no interest). This unexplained disparity results from the disproportionate allocation of the remaining debt.

[¶ 45] "All assets, whether separately obtained or inherited property, are to be considered part of the marital estate. When all of the assets and debts have been included, the district court is to apply the *Ruff–Fischer* guidelines for an equitable distribution of the property." *Ulsaker*, 2006 ND 133, ¶ 10, 717 N.W.2d 567 (citation omitted). The trial court was required to include all assets and debts in the marital estate before making an equitable distribution of the property. After apportioning the medical school loan debt to Rhonda Lorenz, the trial court, in its October 21, 2005, findings and order for judgment, found: "This still leaves [$198,-333][2] of debt to be equitably apportioned between the parties." The trial court then proceeded to consider a distribution of the marital estate without further consideration of the medical school loans and their impact on Rhonda Lorenz's financial condition. Because the trial court did not consider the impact of the $250,000 of medical school loan debt assigned to Rhonda Lorenz when making its equitable distribution of the marital estate, its decision should be reversed and remanded for a proper consideration of all assets and debts under the *Ruff–Fischer* guidelines.

[¶ 46] Further, the trial court clearly erred in failing to equitably divide the balance of the marital debt of $198,333. Of the $198,333, the trial court apportioned $46,288 to Mark Lorenz and $152,045 to Rhonda Lorenz. This results in a large disparity in the apportionment of the marital estate. In its October 21, 2005, findings and order for judgment, the trial court reasoned: "The parties agree that some of the accumulated credit card debt was for living costs and other expenses relating to Rhonda Lorenz's medical school education. However, there was no breakdown as to what amount of credit card debt was directly related to Rhonda Lorenz's education and what was for other purposes." More than 75 percent of the $198,333 debt was apportioned to Rhonda Lorenz, even though some of that debt resulted from supporting the family.

should have been listed as $448,333." A judgment was entered on February 15, 2006.

**2.** At the time of the October 21, 2005, findings and order for judgment, the trial court incorrectly determined the remaining debt to be $198,649 rather than $198,333, which is reflected in the February 15, 2006, judgment.

[¶ 47] The trial court's explanation for the substantial disparity in its division of the debt is inadequate and not supported by the record. The trial court found that Rhonda and Mark Lorenz were earning approximately the same gross monthly income. In actuality, Mark Lorenz was earning $5,131 each month, or approximately $61,600 a year, and Rhonda Lorenz was not earning a salary. She had the opportunity to sign a contract for a residency program, with a monthly income of $3,448, or approximately $41,000 a year. This difference in monthly and yearly income results in an annual salary difference of over $20,000. This is not, as the trial court found in its October 21, 2005, findings and order for judgment, "about the same gross monthly income." The trial court considered Mark Lorenz's payment of child support as a reason to apportion him less of the marital debt, yet failed to consider the expenses Rhonda would incur as custodial parent of the parties' child. Finally, in its October 21, 2005, findings and order for judgment, the trial court found: "While Mark's income may also increase, it is more likely than not that Rhonda's income will rise more quickly and to higher levels than Mark's in the future." The trial court ignored that Rhonda Lorenz had an upcoming three-year residency in which her salary would likely remain less than Mark Lorenz's. The trial court's inequitable division of the $198,333 of debt should be reversed and remanded because the substantial disparity was not adequately explained.

[¶ 48] Even if the $250,000 was appropriately apportioned to Rhonda Lorenz, its effect on her financial situation should have been taken into account when apportioning the balance of $198,333 of debt. The trial court did not take into consideration the medical school loan debt or the parties' actual financial situation when apportioning the balance of the $198,333 of debt and, therefore, erred when it failed to apply this *Ruff–Fischer* guideline.

[¶ 49] The trial court did not concern itself with how Rhonda Lorenz is expected to pay $402,045 in debt. Ordering an individual to pay over $400,000 in debt on an annual salary of approximately $41,000 for the next three years, is not equitable. The trial court ordered Mark Lorenz to make monthly cash payments totaling $10,000 over the next five years, at $2,000 per year. This does very little to reduce the inequitable division of debt, especially considering the present value of that $10,000. Rhonda Lorenz testified she would be required to start paying $1,900 per month beginning in August 2005 on her student loans and her trial exhibit 8 shows her monthly expense needs, including payment of the first and second mortgages and credit card debt at $4,462. She testified her income from her residency would be a gross $3,448 per month. It does not take a math wizard to recognize she cannot meet the obligations assigned to her by the trial court. The trial court contends that Rhonda Lorenz's receipt of the marital home makes up for the failure of the trial court to equalize the net award difference between the parties because the home will continue to appreciate in value. The record does not establish the expected appreciation of a $110,000 home in Minot. The two mortgages against the home total $119,624, leaving no equity in the home. Rhonda Lorenz was apportioned approximately $60,000 more in assets than Mark Lorenz. These are not income-producing assets. Ten thousand dollars in cash payments over five years with no interest and an extra $60,000 in assets, does very little to offset the approximately $356,000 in extra debt apportioned to Rhonda Lorenz. Any appreciation in the Minot home will surely do little to offset that inequitable difference. The *Ruff–Fischer* guidelines

require that the court consider the circumstances and necessities of each party and their financial circumstances as shown by the property owned at the time. *Ulsaker,* 2006 ND 133, ¶ 10, 717 N.W.2d 567. The court erred by not doing so.

[¶ 50] The trial court's findings are clearly erroneous as they pertain to the division of Mark Lorenz's military retirement pension. "In dividing marital property in a divorce action, the trial court normally starts with an equal distribution of the property, and must explain a substantial disparity in the property division." *Striefel v. Striefel,* 2004 ND 210, ¶ 7, 689 N.W.2d 415 (citation omitted). "Pensions and retirement benefits are marital assets subject to equitable distribution by the court." *Id.* at ¶ 10.

[¶ 51] The majority at ¶ 21 concludes: "In this case the benefits were included in the estate, but the parties' failure to present evidence of a present value prevented the court from doing more. On appeal a party cannot complain about error that is of their own making." In *Bullock v. Bullock,* 354 N.W.2d 904 (N.D.1984), this Court affirmed the use of a formula that divided the number of years of marriage by the number of years the spouse was in the military, times half of the spouse's retirement pay, to determine an equitable division of a military retirement pension. In *Johnson v. Johnson,* 2002 ND 151, ¶ 18, 652 N.W.2d 315, we held: "There is no set formula for this division, but rather it should be based on the facts of the case.... Use of the *Bullock* formula to distribute retirement pay is not mandatory because the formula is not the only method of achieving an equitable division of marital property." A formula may be used, or alternatively, the present value may be used and the court may award other property equal to the pension share. Contrary to the majority's position in ¶ 21, lack of

evidence of a present value does not render the pension not divisible to achieve an equitable division of a marital estate.

[¶ 52] In the present case, the trial court received evidence that the parties have been married eleven years, that Mark Lorenz has a vested military pension which will pay $2,000 per month when he retires, and that he has been in the military twenty years. The trial court awarded the military pension wholly to Mark Lorenz. The trial court's explanation was that for five of the eleven years of marriage, Rhonda Lorenz was in medical school. The trial court's award of this military retirement pension to Mark Lorenz further increased the substantial disparity in the allocation of the marital estate without an adequate explanation.

[¶ 53] I would reverse and remand for reconsideration of the entire issue of equitable division of the parties' marital debt and property. We have held:

> Because questions of property division and spousal support cannot be considered separately or in a vacuum, but ordinarily must be examined and dealt with together, and because the property division may have influenced the award and structure of spousal support, the district court may, if it amends spousal support, also reconsider the property distribution.

*Ingebretson v. Ingebretson,* 2005 ND 41, ¶ 10, 693 N.W.2d 1 (citations omitted). Therefore, on remand, the trial court should also reconsider the issue of spousal support together with the debt and property distribution.

[¶ 54] MARY MUEHLEN MARING
CAROL RONNING KAPSNER

VANDE WALLE, Chief Justice, concurring in part and dissenting in part.

[¶ 55] Justices Crothers and Sandstrom would affirm the district court's

property and debt distribution. In the long term, because of the nature of the debt as student debt and Rhonda Lorenz's earning potential, I agree with that distribution. Mark Lorenz's pension is fixed. Rhonda Lorenz will have the opportunity to establish her own pension with a medical degree that was acquired during the marriage. I would affirm that portion of the judgment distributing the property and debt of the parties.

■ [¶ 56] However, on this record it is obvious that in the short term Rhonda Lorenz will not be able to pay the debt and provide for her living expenses on the income that she is to receive as a resident in her medical career, some $41,000 a year, and the $2,000 per year for five years that the district court awarded her to equalize the property and debt distribution.

[¶ 57] Also, in the short term, Mark Lorenz's earning capacity is significantly greater than that of Rhonda Lorenz, as discussed in the separate opinion dissenting in part and concurring in part. Furthermore, Mark Lorenz was allocated a significantly smaller portion of the debt than Rhonda Lorenz and he will not have to make payments on debt that she must make. Under these circumstances, it was error for the district court to refuse to award Rhonda Lorenz temporary spousal support.

[¶ 58] I would reverse that portion of the judgment denying spousal support and remand to the district court for the purpose of awarding Rhonda Lorenz temporary spousal support.

[¶ 59] GERALD W. VANDE WALLE, C.J.

SANDSTROM, Justice, concurring in part and dissenting in part.

[¶ 60] The decision of the Court is contained in the opinion of the Chief Justice—

to reverse on the issue of spousal support and to affirm the remainder of the judgment. For the reasons largely set forth in Justice Crothers' opinion, I would affirm the judgment of the district court in its entirety.

[¶ 61] DALE V. SANDSTROM