2008 ND 71

**David E. LYNNES, Plaintiff and Appellee**

v.

**Carrie L. LYNNES, Defendant and Appellant.**

**No. 20070274.**

Supreme Court of North Dakota.

April 17, 2008.

Tracy J. Lyson (argued) and Timothy M. O'Keeffe (on brief), Kennelly & O'Keeffe, Ltd., Fargo, ND, for plaintiff and appellee.

Mark R. Fraase (argued), Johnson, Ramstad & Mottinger, PLLP, Fargo, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Carrie Lynnes appeals an amended judgment divorcing Carrie and David Lynnes, dividing the parties' marital estate, providing Carrie Lynnes rehabilitative spousal support for a period of two years, and awarding Carrie Lynnes $2,000 in attorney fees. We conclude the district court erred in failing to include all the marital debts and assets in calculating the total marital estate before analyzing the *Ruff–Fischer* guidelines to divide the marital estate. We affirm the divorce decree and award of attorney fees, but reverse and remand the amended judgment for further proceedings consistent with this opinion.

I

[¶ 2] David and Carrie Lynnes were married on June 23, 2001. There were no children born of the marriage, but David Lynnes adopted Carrie Lynnes's twin boys, Adam and Nathan, during the marriage. The boys were 19 years old at the time of trial and are no longer dependent upon David and Carrie Lynnes. The couple separated in July 2006, and an amended judgment awarded the couple a divorce in September 2007.

[¶ 3] Before marriage, David Lynnes graduated from high school and then attended a nine-month welding program at Moorhead Tech in 1991. He worked from 1991 through 1995 for Robert Gibb & Sons. From 1995 to 1996 he worked for Dakota Fence Company. He then returned to Robert Gibb & Sons, until he started a business in 2004. At the time of the divorce, David Lynnes's annual salary from his businesses was approximately $76,000, and he took draws from the businesses of approximately $26,000, totaling $103,000 per year.

[¶ 4] Carrie Lynnes worked at Dakota Fence at the time the parties began dating. She left Dakota Fence and went to work at Knight Printing. Both of these positions paid about $25,000 per year. After high school, Carrie Lynnes took some college classes in 1984. She later attended a cosmetology program, graduating in 1985. She continued her education and graduated from Northwest Technical College in 1990 or 1991 and attended additional college classes in 1991 or 1992. During the marriage, Carrie Lynnes decided to pursue a career in real estate. She obtained her license and began working for Coldwell Banker on July 18, 2006. The divorce was tried about nine months after she began her career at Coldwell Banker, and her realized commissions from sales of real estate grossed $11,597. The district court found that although Carrie Lynnes's present income was substantially less than David Lynnes's, her income would increase over time and she was capable of working and earning at least $25,000 per year.

[¶ 5] At the time of trial, David Lynnes was 37 years old, and Carrie Lynnes was 42. The district court found both David and Carrie Lynnes to be in relatively good

health. The district court found the parties are both capable of working, though at present there exists a discrepancy in their respective earning capacities; David Lynnes's present earning capabilities are nearly four times that projected for Carrie Lynnes.

[¶ 6] Before marriage, David Lynnes owned some personal property and retirement and pension accounts. Carrie Lynnes owned some personal property, and she also had student loan debt. While married, the parties accumulated additional retirement funds, a life insurance policy, and various items of personal property. They also purchased a home, two vehicles, and began three businesses.

[¶ 7] During the marriage, David Lynnes started two businesses, Dave's Welding and Lynnes Welding and Training, and had a 45 percent interest in a third business, Lynnseth, Inc., which was started in July 2006. The district court found the businesses were started with funds from David Lynnes's 401(k) plan of approximately $31,000. A small portion of the 401(k) funds were accumulated during the parties' marriage. Carrie Lynnes worked at the business for a short period of time cleaning up the shop and working as a secretary or receptionist. Dave's Welding and Lynnes Welding and Training were valued by Special Master Leonard Sliwoski as having a total value of $59,000. Lynnseth, Inc. was given a zero value with a contingent asset or liability, which could not be quantified at the time of trial. The district court found the businesses are personal to David Lynnes, meaning he used premarital assets and skills to start up the businesses, and the businesses would cease to exist without him.

[¶ 8] The district court determined both parties were at fault for the breakdown of the marriage. David Lynnes engaged in an extramarital affair with an employee, who became pregnant with his child. Carrie Lynnes's misconduct during the marriage involved dishonesty and poor handling of the parties' finances.

[¶ 9] The district court issued findings of fact, conclusions of law, and order for judgment on June 6, 2007, setting forth the parties' marital estate and dividing the assets and debts between the parties. Carrie Lynnes subsequently moved the district court to amend the findings of fact on June 22, 2007. The district court issued amended findings of fact and order for amended judgment on August 22, 2007. The amended findings of fact awarded Carrie Lynnes additional property, awarded rehabilitative spousal support for two years in the amount of $1,500 per month, and provided David Lynnes would pay $2,000 of Carrie Lynnes's attorney fees. Under the amended judgment, the assets awarded to Carrie Lynnes totaled $165,689, and the debt assigned to her was $117,173, leaving a net award of $48,515, not including the student loan debt of $4,165. David Lynnes was awarded assets valued at $119,221 and debt in the amount of $19,590. The district court analyzed the *Ruff–Fischer* guidelines, but failed to include $4,165 of Carrie Lynnes's student loan debt when calculating the marital estate. The district court failed to consider and assign two small debts, totaling $817 in the findings and judgments. The district court also failed to include a $1,500 asset, a TransAm owned by David Lynnes before the marriage, when calculating the total marital estate.

[¶ 10] The amended judgment was entered on September 6, 2007, and a second amended judgment was entered on September 24, 2007. Carrie Lynnes's notice of appeal, however, was filed after the notice of entry of amended judgment, but before the second amended judgment.

Carrie Lynnes appeals the amended judgment, arguing the district court erred in valuing the businesses, calculating the marital estate, and awarding spousal support and attorney fees.

## II

[¶ 11] "The right of appeal in North Dakota is governed by statute, and is a jurisdictional matter which the Supreme Court will consider sua sponte." *Sabot v. Fargo Women's Health Org., Inc.*, 500 N.W.2d 889, 895 (N.D.1993) (citing *Vorachek v. Citizens State Bank of Lankin*, 421 N.W.2d 45, 49 (N.D.1988)). *See also* N.D. Const. art. VI, § 6. Appeals are authorized from final judgments. N.D.C.C. § 28–27–01; N.D.C.C. § 28–27–02. We note these appellate rules because we review the amended judgment in this case, rather than the second amended judgment entered by the district court after Carrie Lynnes filed her notice of appeal. We treat this as an appeal from the amended judgment only. In the absence of a remand, the trial court had no jurisdiction to further amend the judgment once the appeal was filed. *E.g., Peters–Riemers v. Riemers*, 2003 ND 96, ¶ 16, 663 N.W.2d 657 (citing *Wilson v. Koppy*, 2002 ND 179, ¶ 6, 653 N.W.2d 68) ("With some exceptions, a trial court loses its jurisdiction when a notice of appeal is filed."). Further, because the second amended judgment was filed after the notice of appeal, which specifies Carrie Lynnes appeals the amended judgment, the second amended judgment entered by the district court is not properly before this Court, and we do not consider the second amended judgment. *Dvorak v. Dvorak*, 2007 ND 79, ¶¶ 8–10, 732 N.W.2d 698 (citing N.D.R.App.P. 4(a)) (providing that when appellant fails to file an amended or separate notice of appeal for orders entered after a notice of appeal has been filed, the appellant's failure to do so precludes appellate review of those motions and related judgments or orders).

## A. Valuing the Business, Calculating the Net Marital Estate, and Dividing the Marital Property

[¶ 12] A district court's decisions regarding the division of marital property are treated as findings of fact and may be reversed on appeal only if these findings are clearly erroneous. *Heinz v. Heinz*, 2001 ND 147, ¶ 6, 632 N.W.2d 443. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing the entirety of the evidence, this Court is left with a definite and firm conviction a mistake has been made. *Id.* (citations omitted).

[¶ 13] Carrie Lynnes argues the district court erred in calculating the value of the marital estate, alleging the trial court erred in (1) valuing the parties' businesses; (2) failing to include the student loan debt as marital debt when calculating the net estate and characterizing it instead as premarital; (3) failing to include the debt to David and Carol Wood as marital debt in calculating the net estate; (4) failing to assign two small marital debts to either party; and (5) failing to specifically include the parties' attorney fees as marital debt in calculating the marital estate.

[¶ 14] Marital property must be distributed equitably between the parties. *Heinz*, at ¶ 5. Although the division does not have to be equal, a substantial disparity must be explained. *Lorenz v. Lorenz*, 2007 ND 49, ¶ 6, 729 N.W.2d 692 (citation omitted). All of the assets of the marital estate, regardless of source, must be considered to ensure an equitable division of property. *Horner v. Horner*, 2004 ND 165, ¶ 9, 686 N.W.2d 131; *Kautzman v. Kautzman*, 1998 ND 192, ¶ 10, 585 N.W.2d

561. Assets accumulated after separation but prior to the divorce are included in the marital estate. *Kautzman*, at ¶ 10. After the district court has included all of the marital assets and debts, the district court must apply the *Ruff–Fischer* guidelines. *Horner*, at ¶ 9. The *Ruff–Fischer* guidelines require that the district court consider:

> the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*E.g., Staley v. Staley*, 2004 ND 195, ¶ 8, 688 N.W.2d 182.

[¶ 15] Carrie Lynnes argues the district court incorrectly valued the parties' businesses, which ultimately led to an unfair division of the marital property. In this case, the district court appointed a Special Master, Leonard Sliwoski, to value the businesses. Sliwoski valued the parties' businesses as holding a total value of $59,000. Sliwoski also testified about his reasoning for his opinion as to the business values. Carrie Lynnes presented no independent witnesses to rebut Sliwoski's report.

[¶ 16] The district court's valuation of property is a finding of fact which will be reversed on appeal only if it is clearly erroneous. *Kluck v. Kluck*, 1997 ND 41, ¶ 25, 561 N.W.2d 263. A district court's valuation of property is presumed correct, and the evidence presented must be viewed in the light most favorable to the district court's findings of fact. *Korynta v. Korynta*, 2006 ND 17, ¶ 13, 708

N.W.2d 895. It is the province of the district court to judge the credibility of witnesses and the evidence they introduce. *Davis v. Davis*, 458 N.W.2d 309, 315 (N.D. 1990). When the district court's valuation is within the range of evidence provided by the parties, the district court's valuation will not be set aside, unless this Court has a definite and firm conviction a mistake has been made. *Young v. Young*, 1998 ND 83, ¶ 4, 578 N.W.2d 111 (citing *Hendrickson v. Hendrickson*, 553 N.W.2d 215, 219–20 (N.D.1996)).

[¶ 17] Carrie Lynnes argues the values of the businesses are higher than the value assigned by the Special Master, which was adopted by the district court, because the contingent asset or liability of Lynnseth, Inc. actually increased the value of Dave's Welding. Sliwoski testified that the range of the contingent asset or contingent liability was between negative $27,893 and positive $63,288. Based upon that testimony, the district court found the value of Dave's Welding could actually be less than $56,000, but assigned $56,000 as the value in accordance with the opinions and testimony of Sliwoski. The district court assigned a value of $3,000 to Lynnes Welding and Training, and zero value to Lynnseth, Inc. based on the valuations and testimony of Sliwoski. Carrie Lynnes cross-examined Sliwoski, but did not present any valuations, reports, or testimony to contradict Sliwoski's opinions. Because the district court is responsible for assessing the credibility of witnesses, accepting the valuations given by Sliwoski was not improper. Further, because the values the district court assigned to the businesses fell within the range of values presented by the evidence, there is sufficient evidence to support the findings of the district court, and therefore the findings as to the values of the businesses are not clearly erroneous.

[¶ 18]   Carrie Lynnes next argues the district court improperly calculated the marital estate because the district court failed to include Carrie Lynnes's student loan debt, a debt owed to Carrie Lynnes's parents, a veterinarian bill, and a debt owed on a computer in the district court's initial calculations regarding the marital debt.   The district court, on its marital assets and debt listings in both the findings of fact, conclusions of law, and order for judgment, and the amended judgment, did not include Carrie Lynnes's student loan debt in the amount of $4,165 in calculating the total marital debt.   Instead, the district court deemed the debt "premarital" and did not include it in the marital debt calculation.   We also note the district court failed to include a TransAm David Lynnes owned before the marriage, valued at $1,500, when the district court calculated the entire marital estate.   Again, the district court excluded this asset from the total marital estate, calling it a "premarital" asset.

[¶ 19]   As to the small veterinarian and computer bill, the district court completely failed to assign the debts in its findings, though evidence of the existence of the debts had been submitted to the district court.   The district court's failure to assign these two small debts, totaling $817, or to use them in calculating the net marital estate does not, by itself, constitute clear error.   "A relatively insignificant error in valuation of a marital asset will not, standing alone, constitute sufficient grounds for reversal of the judgment." *Halvorson v. Halvorson*, 482 N.W.2d 869, 872 (N.D.1992) (citing *Dick v. Dick*, 414 N.W.2d 288, 291–92 (N.D.1987)) (providing a "de minimis and an insignificant error that does not justify reversal").   In this case, however, more than these two debts were excluded when calculating the entire marital estate prior to analyzing the *Ruff–*

*Fischer* guidelines.   The district court failed to include a $1,500 asset, David Lynnes's TransAm, $4,165 in Carrie Lynnes's student loan debt, and $817 in two small debts.

[¶ 20]   The district court did consider and include the personal debt Carrie Lynnes owed to her parents; the debt is not excluded in the district court's mathematical worksheet and is discussed in its findings of fact.   Because the district court contemplated the existence of the debt before it analyzed the *Ruff–Fischer* guidelines and may consider " 'which of the parties has incurred particular debts, and the purposes for which those debts were incurred, in determining an equitable allocation of the responsibility for repayment,' " assigning Carrie Lynnes the debt she owed to her parents was not clear error.   *Lorenz*, 2007 ND 49, ¶ 13, 729 N.W.2d 692 (quoting *Brandner v. Brandner*, 2005 ND 111, ¶ 10, 698 N.W.2d 259).

[¶ 21]   According to the amended judgment, the assets awarded to Carrie Lynnes totaled $165,689, and the debt assigned to her was $117,173, leaving a net award of $48,515, not including the student loan debt of $4,165.   David Lynnes was awarded assets valued at $119,221 and debt in the amount of $19,590, creating a net award of $99,631.   The district court split equally a pension plan of $31,771. The district court noted the discrepancy between the awards and analyzed the *Ruff–Fischer* guidelines in distributing the property, but did so only after it failed to include all of the assets and debts held by David and Carrie Lynnes.   Thus, this Court must ask whether omitting the student loan debt created a "substantial" exclusion, such that the district court misapplied the law in determining the net marital estate, and if this Court "can fairly discern from the court's decision that the loan amounts

were not included in the equitable adjustment because the court had already addressed the debt and why it allocated the loans to [the party who received the student loans]." *Lorenz*, 2007 ND 49, ¶ 10, 729 N.W.2d 692.

[¶ 22] This Court has explained that "[i]n dividing the marital estate, the trial court must determine the net marital worth by considering *all* property and debt accumulated by the parties and by using 'the elementary accounting equation of assets minus liabilities to determine the net worth of the marital property.'" *Brandner*, at ¶ 10 (quoting *Neidviecky v. Neidviecky*, 2003 ND 29, ¶ 11, 657 N.W.2d 255) (emphasis in original). A district court must "apply the correct law in determining and distributing the marital estate [because if] . . . substantial amount of debts [are] excluded from the marital estate [ ], we cannot be sure the court would have reached the same result in allocating the assets and debts had it correctly included the [ ] debts as part of the marital estate before allocating the debts between the parties." *Brandner*, at ¶ 11 (citing *Neidviecky*, at ¶ 13).

[¶ 23] Here, failure to consider the student loan debt of $4,165, along with the $1,500 TransAm as an asset, in the cumulative marital estate, creates a situation in which "we cannot be sure the court would have reached the same result in allocating the assets and debts had it correctly included" both the debt and asset. *Brandner*, at ¶ 11 (citing *Neidviecky*, at ¶ 13). When considering whether the excluded debt is substantial, the student loans and two small debts totaling $4,982 are small when viewed in light of the total debt accumulated by the parties. However, when the total excluded debt is viewed in light of the net assets awarded to Carrie Lynnes, the debt would reduce her net award by nearly ten percent, making the

debt significant with regard to her net award. The district court did not directly address its reasons for failing to include the student loan debt in the net marital estate calculation. It is difficult to discern why the district court failed to include the debt; it merely deemed the debt "premarital." *See Lorenz*, at ¶ 10 ("[W]e can fairly discern from the court's decision that the loan amounts were not included in the equitable adjustment because the court had already addressed the debt and why it allocated the loans to [the student who received the loans].")). Because the district court was not clear about its reasons for allocating the loans, we reverse the amended judgment insofar as it calculates the total marital estate and remand for determination of the distribution of the marital estate after a proper calculation of the total marital estate has been made.

### B. Award of Spousal Support

[¶ 24] Carrie Lynnes next argues the district court's spousal support award of $1,500 per month for a period of two years was inadequate and clearly erroneous.

[¶ 25] "A spousal support determination is a finding of fact which will not be reversed on appeal unless it is clearly erroneous." *Wagner v. Wagner*, 2007 ND 33, ¶ 5, 728 N.W.2d 318 (citing *Staley v. Staley*, 2004 ND 195, ¶ 7, 688 N.W.2d 182). "Absent a finding that the spousal support award is clearly erroneous, we will not reverse a district court's award merely because we may have viewed the evidence differently." *Wagner*, at ¶ 5 (citation omitted). In determining the amount and duration of a spousal support award, a district court must consider the *Ruff–Fischer* guidelines. *Wagner*, at ¶ 6 (citing *Staley*, at ¶ 8).

[¶ 26] The district court awarded Carrie Lynnes rehabilitative support in the

amount of $1,500 per month for a period of two years. In doing so, the district court relied upon the *Ruff–Fischer* guidelines, finding both parties were in good health and able to provide his or her own support, but that Carrie Lynnes's present earning capacity was substantially less than David Lynnes's. The district court explained Carrie Lynnes's earning capacity at the time of trial was not representative of her actual or potential earning ability. Specifically, the district court discussed Carrie Lynnes's graduation from a cosmetology program and degree from Northwest Technical College. The district court also found Carrie Lynnes had prior employment positions showing she is capable of earning at least $25,000 per year. The district court explained that the $9,000 per year she earned at the time of trial was because she was new to the real estate profession and her earning capacity would likely improve. However, the district court also considered the disparity in the property distribution when it determined Carrie Lynnes was in need of rehabilitative support for a period of two years.

[¶ 27] "Property division and spousal support are interrelated and intertwined and often must be considered together." *Kostelecky v. Kostelecky*, 2006 ND 120, ¶ 14, 714 N.W.2d 845 (citing *Striefel v. Striefel*, 2004 ND 210, ¶ 17, 689 N.W.2d 415; *Schoenwald v. Schoenwald*, 1999 ND 93, ¶ 6, 593 N.W.2d 350). Because of the interrelation of property division and spousal support, to the extent the district court's award of spousal support is intertwined with its property division, the district court may reconsider the issue of spousal support after it has properly calculated the total marital estate and redetermined the property distribution.

### C. Award of Attorney Fees

[¶ 28] "Although we have concurrent jurisdiction with the trial court to decide this issue, we have recognized the trial court is generally in a better position to consider the relevant factors." *Wagner v. Wagner*, 1998 ND 117, ¶ 11, 579 N.W.2d 207 (citing *Withey v. Hager*, 1997 ND 225, ¶ 10, 571 N.W.2d 142). "A trial court has considerable discretion in formulating an award of attorney fees, and the award will not be overturned unless the complaining party affirmatively establishes the trial court abused its discretion." *Whitmire v. Whitmire*, 1999 ND 56, ¶ 14, 591 N.W.2d 126 (citing *Mahoney v. Mahoney*, 1997 ND 149, ¶ 39, 567 N.W.2d 206). To award attorney fees, the district court must make specific findings supported by evidence of the parties' financial conditions and needs. *Whitmire*, at ¶ 14 (citing *Van Dyke v. Van Dyke*, 538 N.W.2d 197, 203 (N.D.1995)).

[¶ 29] In this case, the district court awarded Carrie Lynnes $2,000 in attorney fees based upon the fact that there was a discrepancy in the parties' earning power and the discrepancy in the division of property. At the time of the award, David Lynnes owed approximately $12,000 in attorney fees and Carrie Lynnes had incurred attorney fees of approximately $9,000, not including the fees for trial. Because of the reasoning provided by the district court, and the discretion the lower court enjoys in these awards, Carrie Lynnes has not demonstrated the award is not supported by facts, or that the award was induced by a misapplication or misinterpretation of the law. The award of attorney fees is affirmed.

[¶ 30] We affirm the divorce decree and award of attorney fees, and we reverse and remand the amended judgment for reconsideration of the issues of property distribution and spousal support.

[¶ 31] MARY MUEHLEN MARING and DANIEL J. CROTHERS, JJ., concur.

VANDE WALLE, Chief Justice, concurring in the result.

[¶ 32] The second amended judgment was entered after the notice of appeal was filed from the amended judgment and there is no appeal from the second amended judgment. I agree with the majority that the second amended judgment is not before us on this appeal. Nevertheless, by attempting to enter a second amended judgment the district court obviously intended to further adjust the distribution of assets and debts to the parties. Because the majority opinion remands the matter to the district court for reconsideration of the distribution of the assets and debts of the parties, I concur in the result.

[¶ 33] DALE V. SANDSTROM.