WILLIAM J. BOEHM, Personal Representative of the
Estate of Annie Bell Brashears *v.*
ALICE HARRINGTON

[No. 970, September Term, 1982.]

*Decided April 13, 1983.*

The cause was argued before ▮MORTON and LISS, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals (retired), specially assigned.

*William J. Boehm* for appellant.

*Samuel Hansel Paavola* for appellee.

LISS, J., delivered the opinion of the Court.

William J. Boehm, the appellant herein, was appointed by the Orphans' Court for Anne Arundel County as special administrator of the estate of Annie Bell Brashears, deceased, to preserve the assets of her estate. Boehm, while acting as special representative, filed a petition in the Orphans' Court for Anne Arundel County requesting that Alice Harrington, the appellee, be required to turn over to Boehm a certificate of deposit and a bank account representing funds originally owned by Annie Bell Brashears and deposited in the names of Mrs. Brashears and Mrs. Harrington. A hearing was held before the Orphans' Court and by agreement Boehm filed a bill of complaint to determine the ownership of the accounts which were the subject of controversy. The appellee filed an answer to the bill of complaint and the matter came on for hearing in the Circuit Court for Anne Arundel County.

The evidence produced before the trial judge disclosed that in 1978 Annie Bell Brashears was the owner of a savings account in the Annapolis Federal Savings & Loan Association which was held in the name of Mrs. Brashears and her sister, Hattie Fallen. Later that year, Mrs. Brashears caused Mrs. Fallen's name to be removed from the savings account and the account was then listed in the names of Mrs. Brashears and Mrs. Harrington. On September 15, 1978, the savings account in the Annapolis Federal Savings & Loan Association was closed and the funds withdrawn. A portion of the funds was deposited in a checking account at the Annapolis Banking & Trust Company. The checking account was opened in the name of Alice M. Harrington and Annie Bell Brashears, subject to the order of either, balance at death of either to belong to the survivor. Mrs. Brashears could not write her name and her mark was accepted by the bank as her signature.

On September 15, 1978, the Annapolis Banking & Trust Company issued a certificate of deposit in the name of Annie Bell Brashears *and* Alice M. Harrington in the amount of $10,000. The certificate provided that all interest payable quarterly was to be deposited in the checking account previously mentioned. It was conceded, at trial, that all the funds in both the checking account and the certificate of deposit were originally the sole property of Mrs. Brashears.

Mrs. Brashears died intestate in December of 1979. At the time of her death the principal assets of her estate were two homes, the checking account in the Annapolis bank and the certificate of deposit. The original certificate of deposit had been "rolled over" by the bank, and reissued in the same manner on September 21, 1979 in the amount of $10,600. Both the personal representative and Mrs. Harrington claimed ownership of the balance remaining in the checking account and the certificate of deposit. It was conceded at trial that during the lifetime of Mrs. Brashears the checking account was used exclusively to provide funds for the medical expenses and maintenance of Mrs. Brashears and that after her death several checks were issued on this account by Mrs. Harrington which were not for this purpose.

The evidence before the trial judge established that Mrs. Brashears was uneducated, and illiterate and had relatively little knowledge of her business affairs. Until 1974 her husband had taken care of her business affairs and thereafter her attorney had taken over. In 1975 she underwent surgery resulting in the amputation of one of her feet. Beginning in 1978 Mrs. Harrington had become her adviser and confidante in the management of her affairs.

The trial court found that Mrs. Brashears had only minimal contact with her family in the last years of her life and that Mrs. Harrington had taken over a substantial portion of the responsibility for her care. There was testimony produced by the appellee that the deceased had praised Mrs. Harrington as a sister, without whom she could not have survived. There was testimony that Mrs. Harrington had left her sick husband to care for the needs of Mrs. Brashears.

The trial judge, after hearing all the witnesses and arguments of counsel, concluded that the checking account was an account of convenience established for the purpose of paying Mrs. Brashears' obligations and that it was intended that upon her death the balance then remaining in the checking account was to be the property of Mrs. Brashears' estate. The court further decided that the certificate of deposit was a gift inter vivos from Mrs. Brashears to Mrs. Harrington. A decree and order reflecting the trial court's conclusions was issued on April 27, 1982. Both the appellant and the appellee as cross-appellant were aggrieved by the court's decree and each of them seasonably filed appeals in this proceeding. The issues raised by the appeals are the following:

    1. Did the trial court err in concluding that the checking account was an account of convenience and upon the death of Mrs. Brashears the balance remaining in the account was the property of the estate of Annie Bell Brashears?

    2. Did the trial court err in concluding that the appellee was entitled to ownership of the certificate

of deposit because of an alleged gift inter vivos from Mrs. Brashears to Mrs. Harrington?

## 1.

The trial judge made certain findings of fact which are amply supported by the record in this case. He found that there was a confidential relationship between Mrs. Brashears and Mrs. Harrington. He also concluded that some twenty months before her death, Mrs. Brashears was "not senile or unable to take care of her own affairs at the time she created the checking account and certificate of deposit" and he had "no problem in concluding that Mrs. Brashears knew exactly what she was doing when she opened the accounts."

We shall initially consider the status of the checking account established by Mrs. Brashears. That account was deposited in the name of Mrs. Brashears and Mrs. Harrington as joint owners, in trust for one another, subject to the order of either, and the balance upon death to belong to the survivor. The creation of such a trust gives rise to a rebuttable presumption of its validity, and the burden is thrust upon the party seeking to rebut it. *Haller v. White,* 228 Md. 505, 509-10, 180 A.2d 689 (1962); *Midler v. Shapiro,* 33 Md. App. 264, 270, 364 A.2d 99 (1976). When, however, a confidential relationship is shown to exist, as in the instant case, the burden shifts to the party seeking to uphold the validity of the trust and gift. It then becomes the duty of the donee to demonstrate that the donor understood the nature of the transaction and intended to make a gift. *Tribull v. Tribull,* 208 Md. 490, 507, 119 A.2d 399 (1956).

The trial court concluded that based upon all the facts and circumstances the presumption of the validity of the gift was rebutted by the intention of the donor, Mrs. Brashears, to establish an account of convenience. In *Shirk v. Suburban Trust Company,* 248 Md. 114, 235 A.2d 549 (1967), the Court of Appeals said:

The general rule is that the creation of a joint bank account in the form used here is a sufficient declaration of trust provided the presumption arising therefrom is neither rebutted nor explained. [Citations omitted]. But, as stated in *Shook v. Shook,* 213 Md. 603, 607, 132 A.2d 460, 462 (1957) "[t]he entry may be explained and the intention indicated may be rebutted. It is always open to the executor or administrator [of the estate] of the decedent or the parties in interest to show that the purpose of the declaration of trust was not what it, in form, appeared to be. The rebuttable presumption is that created by the execution of the transfer, and the burden of proof is on those seeking to rebut such presumption." [*Id.,* at 118-19].

In *Haller v. White, supra,* the Court of Appeals had before it an account similar to the account in this case which had been established primarily to supply the needs of the donor during her lifetime. In discussing the disposition of the remaining funds at the death of the donor, the Court stated:

The appellant contends that Mrs. Poole delivered the money to Mrs. Haller and agreed to the opening of the account in the names of the two nieces as joint owners, merely as a convenience and in order that they might withdraw funds for her benefit. The appellee agrees that the money was to be used for the "needs" of Mrs. Poole during her lifetime. There is a sharp conflict in the testimony as to what was her intention in regard to the disposition of the balance remaining in the account at her death. Mrs. Haller contends that it was Mrs. Poole's intention that the balance be paid to Mrs. Stallings; Mrs. White contends that it was her intention that it be divided between the two nieces. There is a third possibility that the balance might be payable to Mrs. Poole's estate.

The mere fact that the fund was to be used primarily for the needs of Mrs. Poole during her lifetime

would not necessarily defeat or invalidate a gift *inter vivos* of the balance remaining at death. [Citations omitted]. The question is as to the disposition of the remainder interest.

On this question we think the most significant fact is the form of the account which on its face creates a joint tenancy. [228 Md. at 510].

We have carefully reviewed the record extract in this case and are convinced that Mrs. Harrington has met her burden of establishing that the donor understood the nature of the transaction and intended to make a gift of the funds remaining in the checking account, at the donor's death, to her. The fact that the trust and savings account form may be used to enable the payment of bills or for convenience of withdrawal does not necessarily limit the terms of the trust. *See Bierau v. Bohemian Bldg., Loan & Savings Association, ("Slavie" of Baltimore City),* 205 Md. 456, 109 A.2d 120 (1954). The factors to be utilized in determining whether a donor's transfer of assets to donee, who has a confidential relationship, is fair and reasonable, were stated by this Court in *Midler v. Shapiro, supra,* as follows:

Some of the factors the Court must consider in determining whether the "heavy burden" of demonstrating "fairness" and "reasonableness" has been met are: (1) the voluntariness of the act [citation omitted]; (2) the stripping of the donor of his or her assets vis-à-vis the incidence of control retained by the donor [citation omitted]; (3) the motive of the person in whom the confidence was reposed [citation omitted]; (4) the degree to which the donor heeded the advice of the person possessed of the donor's confidence [citation omitted]; (5) whether the donor acted upon independent advice [citations omitted]; and (6) the comprehension of the donor of what he or she was doing. [Citation omitted].

We are convinced that the factual circumstances support rather than rebut the presumption of the intention to create

survivorship rights in Mrs. Harrington in the checking account. The checking account was already an account in the names of Mrs. Brashears and Mrs. Harrington as joint owners, subject to the order of either balance at death to the survivor. The checking account was opened twenty months before Mrs. Brashears' death. The evidence was that at the time the checking account was opened Mrs. Brashears was fully advised by the representative of the bank that either party could withdraw the entire balance in the account at any time. It was not until after she had been so informed that Mrs. Brashears placed her mark on the signature cards. Although she appeared frail and needed a walker to get around, there was no evidence of either physical or mental disability which would have prevented her from fully understanding the significance of the opening of the checking account and the manner in which it was recorded on the bank's books. According to the bank's representative, she was neither severely ill nor mentally handicapped. The evidence was clear that the two women were good friends and that Mrs. Harrington took care of Mrs. Brashears when her own family members had limited contact with her because of their absence from the area.

We conclude that Mrs. Harrington met the burden imposed on her by reason of the confidential relationship existing between the parties and that the appellant has offered no evidence which justified the trial judge's conclusion that the checking account was solely an account of convenience. We hold that the funds remaining in the checking account at the death of Mrs. Brashears belong to the survivor, Mrs. Harrington.

## 2.

We next address the issue of the ownership of the funds represented by the certificate of deposit issued by the Annapolis Banking & Trust Company. Counsel have not referred us to any case involving the question of an alleged gift of such a certificate of deposit. So far as we have been

able to determine, this is a case of first impression on that issue. This is, of course, not surprising, since the certificate of deposit form is a comparatively recent development in the banking industry.

Counsel for the appellant and appellee have treated the dispute as if it were an ordinary gift or attempted gift of a savings deposit. The trial judge utilized the same legal theory and opined that "there was a gift from Mrs. Brashears to Mrs. Harrington in the amount of the certificate of deposit namely ten thousand six hundred dollars including all the interest after death." We do not agree. It is our opinion that the certificate of deposit here involved is a chose in action, similar in legal significance to a policy of life insurance, stock certificate, or other personal property of a like nature. Black's Law Dictionary 305 (4th Edition 1968) has defined a chose in action as "all property in action which depends entirely on contracts express or implied."

That a certificate of deposit is treated differently from an ordinary savings bank deposit is evidenced by the testimony of Mrs. Alice Ann Hodges, assistant vice-president of Annapolis Banking and Trust Company, who appeared as a witness in this case. She testified that the certificate had no supporting collateral papers or signature cards of any kind. With the exception of the legend which we have recited, there was no other indication of ownership. The certificate made no provision for joint ownership or right or survivorship, but merely indicated ownership of the funds represented by the certificate of deposit in the names of Annie Bell Brashears *and* Alice M. Harrington. Mrs. Hodges advised Mrs. Brashears and Mrs. Harrington at the time the certificate of deposit was issued that "both signatures were necessary in order to cash the certificate or roll over or redeem it or whatever they wanted to do with it when it became due."

The Court of Appeals, in *Ratsch v. Rengel,* 180 Md. 196, 23 A.2d 680 (1942), had before it the question of the right and manner of assignment or gift of a life insurance policy. As the Court stated at p. 201, "[t]he rule has long been settled

in this State, as elsewhere, that life insurance policies are mere choses in action, and, as such, may be the subject of assignment, or gift. [citations omitted]. . . . The question of whether there has been a valid assignment, or gift, depends, to a great extent, upon the true facts and circumstances of a particular case."

The requirements for a valid inter vivos gift of a chose in action are the same as those for the gift of other personal property. They include an intention on the part of the donor to transfer the property, a delivery by the donor and an acceptance by the donee. The delivery must transfer the donor's dominion over the property. There cannot be reserved to the donor a *locus poenitentiae,* which is the power to revoke the gift or the dominion over the subject matter of the gift. *Rogers v. Rogers,* 271 Md. 603, 319 A.2d 119 (1974); *Snyder v. Stouffer,* 270 Md. 647, 313 A.2d 497 (1974); *In re Bauernschmidt's Estate,* 97 Md. 35, 54 A. 637 (1903).

We are convinced that the requisite elements for a valid gift inter vivos of the certificate of deposit were established by the appellee. There was evidence sufficient to establish a donative intent, delivery was proven by the fact that the appellee had possession of the certificate and surrendered it to the bank for reissue when it was "rolled over," and there was, of course, a showing of acceptance by the donee. *See Shaffer v. Lohr,* 264 Md. 397, 287 A.2d 42 (1972); *Jones v. Crisp,* 109 Md. 30, 71 A. 515 (1908).

While the evidence indicated surrender of dominion and control sufficient to establish delivery,[1] it did not, in our opinion, amount to a delivery of *complete* control of *all the funds* represented by the certificate of deposit to the donee. The certificate clearly stated that it was owned by Mrs. Brashears *and* Mrs. Harrington. The named owners were not designated as joint owners, there was no explicit right of survivorship stated on the certificate. We have carefully

---

1. For example, the certificate could only be surrendered by both owners while they both survived. Payment when due would be required to be made in both names as co-owners.

read the testimony of Alice A. Hodges, the bank representative who handled the transactions at the time of the establishment of the checking account and the issuance of the certificate of deposit. There is no explanation suggested why the checking account was opened as a joint account balance to survivor whereas the certificate merely designated Mrs. Brashears and Mrs. Harrington as co-owners.

In Maryland, joint tenancies are looked upon with disfavor. Section 2-117 of the Real Property Article, Maryland Code (1974, 1981 Repl. Vol.) provides as follows, "No deed, will, or other written instrument which affects land or other personal property, creates an estate in joint tenancy, unless the deed, will, or other written instrument expressly provides that the property granted is to be held in joint tenancy."

The section has been held to apply to personal property as well as to real property. *See Gosman v. Gosman,* 19 Md. App. 66, 309 A.2d 34 (1973), *modified,* 271 Md. 514, 318 A.2d 821 (1974). In *Register of Wills for Montgomery County v. Madine,* 242 Md. 437, 219 A.2d 245 (1966), it was held that in order for an instrument to create a joint tenancy, the joint tenancy must be clearly expressed so as to leave no doubt of the intention of the parties.

In the absence of proof of the creation of a joint tenancy or the establishment of a valid trust with the right of survivorship, we are constrained to find that Mrs. Brashears, when she arranged for the issuance of the certificate of deposit in the form which we have noted, created a tenancy in common between herself and Mrs. Harrington. That type of concurrent estate means that each of the co-tenants separately owned one-half of the total funds. Each was entitled to share with the other the right of ownership of their individual one-half interest. If either died intestate, her undivided one-half interest would pass by operation of law to her own heirs. Each had a right to transfer her undivided one-half share by last will and testament to such person or persons as she chose. The important distinction to be made was that there was *no* right of survivorship.

When Mrs. Brashears died intestate her personal representative was entitled to the proceeds of her undivided one-half interest in the certificate of deposit.

*Judgments affirmed in part, reversed in part, costs to be divided between the parties.*