2009 ND 82

**Jennifer KOVARIK, Plaintiff and Appellant**

v.

**Bradly KOVARIK, Defendant and Appellee.**

**No. 20080230.**

Supreme Court of North Dakota.

May 14, 2009.

Patti J. Jensen, Galstad, Jensen & Olson, P.A., East Grand Forks MN, for plaintiff and appellant.

Darcie M. Einarson, Einarson Law Office, P.C., Grafton, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1]   Jennifer Kovarik, now known as Jennifer Stahl, appeals a district court judgment dividing marital property between her and her former husband, Bradly Kovarik.  We affirm.

I

[¶ 2]   Jennifer and Bradly Kovarik were married in July 2001.  There were no children born of the marriage.  They separated in August 2007, and Jennifer Kovarik sued for divorce in September 2007.  On her preliminary property and debt listing under N.D.R.Ct. 8.3, Jennifer Kovarik listed three parcels of real property and four certificates of deposit allegedly owned by Bradly Kovarik.  Bradly Kovarik denied having any interest in the certificates of deposit and two of the three parcels.  Trial was held in 2008.

[¶ 3]   In 2001, a few months after the parties' marriage, Bradly Kovarik's parents deeded some real property to Bradly Kovarik and his sister, Wanda Morstad.  Two parcels were deeded to Bradly Kovarik alone, and one parcel was deeded to him and Morstad jointly.  The transfers included a reservation of a life estate interest for Bradly Kovarik's parents.  After Bradly Kovarik's parents liquidated their farm business and equipment, they placed the proceeds in certificates of deposit.  Four of these certificates were placed in the names of Bradly Kovarik and his sister.  The certificates were retained by Bradly Kovarik's parents in their home.  Although the certificates were in both Bradly Kovarik's and Morstad's names, Morstad declared the interest from the certificates as income on her tax return each year.  Bradly Kovarik's parents testified, however, they reimbursed Morstad for any taxes she paid as a result.

[¶ 4]   At trial, Bradly Kovarik admitted he transferred his remainder interest in the two parcels at issue to his parents in contemplation of the divorce.  He also testified he first learned about the existence of the certificates of deposit from his sister when she told him she had cashed one that had his name on it as well, but he did not receive any of the proceeds.  At the request of her mother, Morstad also negotiated the other three certificates of deposit after Jennifer and Bradly Kovarik's divorce proceedings had begun, but before the trial.

[¶ 5]   The district court valued the parties' marital assets at $110,669.07, and their marital debt at $89,997.08.  The court awarded Jennifer Kovarik $11,396.59 in marital property.  She was allocated $21,367.39 of the parties' marital debt.  The court awarded Bradly Kovarik $9,275.40 in marital property, including the parties' home and the remainder interest in a real estate property in which his parents retain a life estate, and apportioned him $68,629.69 of the marital debt.  The court explained in its amended findings of fact, conclusions of law, and order for

judgment that it had considered that the real estate was transferred to remove it from the marital assets, which together with other factors led to the slightly unequal award of property. The district court found Bradly Kovarik did not have any interest in the certificates of deposit, and therefore did not include them in the value of the marital estate.

[¶ 6]  Jennifer Kovarik appeals, arguing the district court erred in excluding Bradly Kovarik's remainder interest in two parcels of property, because that interest was transferred without any consideration and in contemplation of the divorce, resulting in dissipation of marital property. She also argues the district court erred in not including in the marital assets Bradly Kovarik's interest in four certificates of deposit for a total of $60,000.

[¶ 7]  The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶ 8]  A district court's decisions regarding the division of marital property are findings of fact and may be reversed on appeal only if clearly erroneous. *Lynnes v. Lynnes,* 2008 ND 71, ¶ 12, 747 N.W.2d 93. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing the entirety of the evidence, this Court is left with a definite and firm conviction a mistake has been made." *Id.* A district court's findings of fact are presumed correct, and we view the evidence in the light most favorable to its findings. *Lorenz v. Lorenz,* 2007 ND 49, ¶ 5, 729 N.W.2d 692.

[¶ 9]  Division of marital property upon divorce must be equitable. N.D.C.C. § 14–05–24(1). Although the division does not have to be equal, a substantial disparity must be explained. *Wold v. Wold,* 2008 ND 14, ¶ 6, 744 N.W.2d 541. All of the real and personal property accumulated by the parties, regardless of source, must be included in the marital estate. *Lynnes,* 2008 ND 71, ¶ 14, 747 N.W.2d 93. After including all of the marital assets and debts, the district court must apply the *Ruff–Fischer* guidelines to divide the property. *Id.; Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966); *Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107 (1952).

### A

[¶ 10]  A party's dissipation of marital assets is an important factor to consider in arriving at an equitable distribution of the property. *Horner v. Horner,* 2004 ND 165, ¶ 16, 686 N.W.2d 131.

[¶ 11]  Jennifer Kovarik argues the district court failed to properly include the property transferred by Bradly Kovarik and therefore the court's order could not have resulted in a fair and equitable distribution of the marital property. At trial, Bradly Kovarik admitted he transferred the property in an attempt to remove it from the parties' marital assets. The district court found the real estate property to have been transferred in contemplation of a divorce. The district court identified the property and valued it at a total of $35,151.98. The district court also explained that had the transferred property been included, Bradly Kovarik would have been awarded approximately $32,000 more than Jennifer Kovarik.

[¶ 12]  Although the district court did not include the value of the transferred property in the mathematical worksheet, its ultimate property division reflected that the transfer occurred in contemplation of

the divorce. As in *Lorenz*, 2007 ND 49, ¶ 10, 729 N.W.2d 692, in which the district court did not include one spouse's school loans in the mathematical worksheet but had included them in the parties' total marital debt, here, although the district court did not include the value of the property in the mathematical worksheet, it made detailed fact findings regarding the property. Further, in a concluding paragraph to its amended findings of fact, conclusions of law and order for judgment, the district court, explaining the unequal property division, stated, "While [the property division] is not equal this Court has considered the fact the defendant transferred a $35,151.98 of value of a remainder interest in the real property five days prior to signing the admission of service of a summons and complaint in a divorce action." On the basis of the record, we conclude the district court ultimately considered the dissipated property in the marital property distribution although it did not include its value in the mathematical worksheet. The district court thus did not exclude the transferred real estate from its decision regarding the division of the parties' marital property.

## B

[¶ 13] A district court may consider property to be part of the marital estate, if supported by evidence, even if a party claims it is owned by a nonparty. *Barth v. Barth*, 1999 ND 91, ¶ 8, 593 N.W.2d 359. "The principles applicable to inter vivos gifts in general apply as well to purported gifts of certificates of deposit." 38 Am.Jur.2d *Gifts* § 67 (1999). A valid gift made during the donor's lifetime must satisfy certain requirements—donative intent, delivery, actual or constructive, and acceptance by donee. *Makedonsky v. North Dakota Dep't of Human Servs.*, 2008 ND 49, ¶ 11, 746 N.W.2d 185. ("A valid gift requires an intention by the do-

nor to then and there give the property to the donee, coupled with an actual or constructive delivery of the property to the donee and acceptance of the property by the donee.") A donor's intent is a question of fact. *Doeden v. Stubstad*, 2008 ND 165, ¶ 12, 755 N.W.2d 859. The actual or constructive delivery must be "of a nature sufficient to divest the owner of all dominion over the property and to invest the donee therewith." *In re Kaspari's Estate*, 71 N.W.2d 558, 567 (N.D.1955).

[¶ 14] Bradly Kovarik's parents testified that after liquidating their farm and equipment in 1999, they placed four certificates of deposit in Bradly Kovarik's and his sister's names—"Wanda Morstad or Bradly Kovarik." They also testified they did not intend to give Bradly Kovarik and Morstad any present interest in the certificates. Moreover, Bradly Kovarik's father testified the certificates, prior to having been cashed out, had been locked in a safe in their home and neither Bradly Kovarik nor his sister could just come and take the certificates.

[¶ 15] Bradly Kovarik testified he had no knowledge of the certificates' existence until his sister told him she cashed one out and used some of the proceeds for home repairs. He also testified he did not receive any of the remaining proceeds. Wanda Morstad testified she did not expect the certificates of deposit to belong to her. When requested, she assisted her parents in cashing out the certificates, which she did with respect to the remaining three certificates.

[¶ 16] The district court found Bradly Kovarik's parents did not intend to gift the certificates to him and his sister. The court further found the certificates were never delivered to either Bradly Kovarik or his sister but were retained in their parents' possession. The record does not

reflect donative intent or delivery of the certificates to Bradly Kovarik, either actual or constructive. In the absence of a donative intent and delivery, the district court's finding that there was no valid gift is not clearly erroneous. *See McGillivray v. First Nat'l Bank,* 56 N.D. 152, 217 N.W. 150 (N.D.1927) (there was no complete gift of certificates of deposit made in the name of the alleged donee because the alleged donor retained at all time possession of the certificates and the key to the safety deposit box where the certificates were kept, thus keeping control of them, and there was no evidence to establish that the alleged donor intended to divest herself of the use or absolute control of the money deposited).

### III

[¶ 17]   Jennifer Kovarik also argues the district court erred in valuing the personal property awarded to Bradly Kovarik at $785.

[¶ 18]   We do not reweigh evidence or reassess credibility. *Oldham v. Oldham,* 2004 ND 62, ¶ 14, 677 N.W.2d 196.   The district court found that although Jennifer Kovarik valued Bradly Kovarik's property at $8,000, she did not provide any evidentiary support.   Bradly Kovarik valued the personal property remaining in his possession at $785.   The district court, finding Jennifer Kovarik did not dispute Bradly Kovarik's assigned values, accepted Bradly Kovarik's valuation. On the basis of the record, Jennifer Kovarik's allegation that the district court erred in its valuation of property is groundless, and the property valuation is not clearly erroneous.

### IV

[¶ 19]   We hold the district court's property distribution and property valuation is not clearly erroneous, and affirm.

[¶ 20] GERALD W. VANDE WALLE, C.J., and DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.

MARING, Justice, dissenting.

[¶ 21]   I respectfully dissent from Part IIB of the Majority opinion because the district court clearly erred in finding Bradly Kovarik was not aware of the certificates of deposit, and it erred in concluding Bradly Kovarik's parents never gave him the certificates of deposit.

### I

[¶ 22]   After reviewing the transcript and record, I believe that the district court clearly erred in finding that Bradly Kovarik did not know about the certificates of deposit.   "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence, the reviewing court is left with a definite and firm conviction a mistake has been made." *Ulsaker v. White,* 2009 ND 18, ¶ 8, 760 N.W.2d 82.   The district court's finding of fact XXXIII states: "Bradly was not even aware of these Certificates."   The trial transcript indicates Bradly Kovarik was aware of at least one certificate of deposit.   Bradly Kovarik admitted at trial that he knew his name was on one certificate of deposit.   Bradly Kovarik was asked, "On August 14th of 2007, did you have any interest in any certificates of deposit?"   Bradly Kovarik paused and then answered, "My name was on one that my sister had cashed."   A few moments later, the following exchange occurred:

[Jennifer Kovarik's attorney]: Mr. Kovarik on August 14th of 2007, did you have an interest in Certificates of De-

posits by virtue of the fact that your name was on them?

[Bradly Kovarik]: I'm not sure on the date that my sister cashed it.

[Jennifer Kovarik's attorney]: Are you aware that there was, then you are saying [that there was] one certificate of deposit on which your name appear[ed]?

[Bradly Kovarik]: That I knew of yes. There was one and my sister cashed it.

. . . .

[Jennifer Kovarik's attorney]: You knew you were a co-owner of that certificate of deposit with your sister did you not?

[Bradly Kovarik]: I knew my name was on it yes.

[¶ 23] Bradly Kovarik's sister testified that she and Bradly Kovarik were joint-owners of the certificates of deposit. Bradly Kovarik's father testified that Bradly Kovarik knew about the first certificate of deposit that was cashed. Bradly Kovarik's mother testified that Bradly Kovarik was the co-owner of the certificates of deposit.

[¶ 24] Bradly Kovarik also submitted a January 28, 2008, affidavit to the court in which he admitted that he was the co-owner of the certificate of deposit that his sister cashed. He stated, "My parents had a CD which named my sister and I as co-owner." Bradly Kovarik also stated, "I do know that I was listed on the CD that came due in August of 2007." In addition to acknowledging that he knew of the certificate of deposit, Bradly Kovarik attached a letter from the vice president of the bank where the certificate of deposit was held. The letter was dated October 9, 2007, titled "RE: Certificate of Deposit # 113552 payable at Citizens State Bank of Lankin," and stated, "On August 31, 2007, Wanda Morstad, a co-owner of the above stated certificate of deposit, negotiated the deposit instrument for payment in full." This affidavit and letter serve as further proof that Bradly Kovarik was aware that he was a co-owner of a certificate of deposit.

[¶ 25] Additionally, Bradly Kovarik's February 19, 2008, answers to interrogatories illustrate he knew of the certificate of deposit. Interrogatory number forty-nine asks Bradly Kovarik whether he was a co-owner of the certificate of deposit that was cashed on August 31, 2007. Bradly Kovarik admitted that the certificate of deposit was written in his and his sister's names. Bradly Kovarik's answers to interrogatories was introduced at trial and was further evidence that he was aware of at least one of the certificates of deposit prior to trial.

[¶ 26] The Majority mischaracterizes Bradly Kovarik's testimony relating to his knowledge of the certificates of deposit. The Majority, at ¶ 15, states, "Bradly Kovarik testified he had no knowledge of the certificates' existence until his sister told him she cashed one out and used some of the proceeds for home repairs." Bradly Kovarik's testimony on when he learned of the certificate of deposit is less clear than the Majority indicates, as is evident from this exchange:

[Jennifer Kovarik's attorney]: All right. You do know however that Ms. Maurstad [sic] cashed a certificate of deposit, correct?

[Bradly Kovarik]: I know she cashed a certificate of deposit, I don't know which one, I don't know which number.

[Jennifer Kovarik's attorney]: And how do you know that?

[Bradly Kovarik]: She told me.

[Jennifer Kovarik's attorney]: And when did she tell you that?

[Bradly Kovarik]: August.

[Jennifer Kovarik's attorney]: Of what year?

[Bradly Kovarik]: Of 2007.

Based on the testimony, it is unclear whether Bradly Kovarik knew of the certificate of deposit before his sister cashed it. However, it is clear that Bradly Kovarik admitted his name was on the certificate of deposit when the divorce proceedings commenced. Because there is no evidence to support the district court's finding that Bradly Kovarik was not aware of the certificates of deposit, its finding is clearly erroneous.

## II

[¶ 27] The district court concluded Bradly Kovarik's parents did not gift the assets to Bradly Kovarik or his sister. In support, the district court concluded the parents placed the certificates of deposit in their children's names for tax purposes and succession planning only, and, thus, there was no donative intent. The district court also concluded the certificates of deposit were not delivered to Bradly Kovarik or his sister. The district court's conclusions are based on an erroneous interpretation of the law and should be reversed.

### A

[¶ 28] First, the district court found Bradly Kovarik's parents did not intend to give the certificates of deposit to Bradly Kovarik or his sister. This finding is not supported by the record. Bradly Kovarik admits that he and his sister were the co-owners of the certificates of deposit. Bradly Kovarik's sister also testified on three occasions that she was the co-owner of the certificates of deposit with her brother. She admitted that she cashed one of the certificates of deposit in August of 2007 because she "had some house problems, [and she] needed some money" and the certificate of deposit that she cashed was one jointly owned with Bradly Kovarik. Bradly Kovarik's sister explained that the certificate of deposit was worth $25,000; she took $12,000; her parents took $12,000; and her parents took the remaining $1,000 in cash. The parents gave Bradly Kovarik $500 and his sister $500 at Christmas. Bradly Kovarik's sister was also asked if anyone had suggested to her that the certificates of deposit would be withdrawn. The following exchange then took place:

[Wanda Morstad]: No, but I knew they were there the whole time.

[Jennifer Kovarik's attorney]: Okay.

[Wanda Morstad]: So if I wanted to take them out I could.

[Jennifer Kovarik's attorney]: And there—but there was no suggestion by anyone else in your family that there was a reason to withdraw funds?

[Wanda Morstad]: No, because we didn't need any money for anything.

[¶ 29] Wanda Morstad's testimony establishes that she knew there were certificates of deposit, she was able to cash them, and she was the joint owner of the certificates. Bradly Kovarik's father, Dennis Kovarik, was questioned regarding the circumstances surrounding the cashing of the first certificate of deposit:

[Jennifer Kovarik's attorney]: Well the first one, your daughter testified that she cashed and it was split in half so she received her half as co-owner fo [sic] twelve thousand five hundred dollars. And then Mr. Kovarik, your son's half because he was the co-owner went to you is that true?

[Dennis Kovarik]: Right.

[Jennifer Kovarik's attorney]: So when that first certificate of deposit was cashed, I assume that by dividing it equally, and your children were the

co-owners, you gave the twelve thousand five hundred to your daughter Wanda, correct?

[Dennis Kovarik]: Right.

[Jennifer Kovarik's attorney]: But you didn't give the other twelve thousand five hundred to your son Bradly who was the other co-owner?

[Dennis Kovarik]: No I didn't.

[¶ 30] Dennis Kovarik's testimony establishes that he knew Bradly Kovarik was a joint owner of the certificate of deposit and that the proceeds from the certificate of deposit were divided in half, according to the nature of the ownership of the certificates. Bradly Kovarik's mother, Marlene Kovarik, was also questioned about the circumstances surrounding the cashing of the first certificate of deposit:

[Jennifer Kovarik's attorney]: You said your daughter cashed one out in August of 2007?

[Marlene Kovarik]: It was last year, yes.

[Jennifer Kovarik's attorney]: And that's the one you took Mr. Brad Kovarik's twelve thousand five hundred dollars and then Wanda Maurstad [sic] took hers correct?

[Marlene Kovarik]: Right. It was our twelve thousand dollars.

[Jennifer Kovarik's attorney]: But half of it went to your daughter?

[Marlene Kovarik]: Right.

[Jennifer Kovarik's attorney]: And half of it that—the other co-owner on that certificate of deposit is your son Bradly?

[Marlene Kovarik]: Right.

[Jennifer Kovarik's attorney]: And the other half that would have gone to him, went to you?

[Marlene Kovarik]: Yes.

. . . .

[Jennifer Kovarik's attorney]: And you testified that twelve thousand five [hundred] of that went to your daughter Wanda?

[Marlene Kovarik]: Twelve thousand.

[Jennifer Kovarik's attorney]: Twelve thousand and twelve thousand which would be Mr. Kovarik's share went to you?

[Marlene Kovarik]: Yeap.

[Jennifer Kovarik's attorney]: And then you turned around and gave five hundred to Ms. Maurstad [sic] and five hundred to your son Bradly?

[Marlene Kovarik]: Right for Christmas.

[Jennifer Kovarik's attorney]: All right, and I assume that when [sic] that gift of [a] thousand dollars you keep things equal?

[Marlene Kovarik]: Right.

Marlene Kovarik's testimony establishes that Bradly Kovarik was the joint owner of the certificates of deposit, his "share" of the first certificate was one-half of the total certificate, Bradly Kovarik's sister received her share in the amount of $12,000, and the $1,000 was given $500 to Bradly and $500 to his sister.

[¶ 31] These admissions by Bradly Kovarik and his family that he owned the certificates of deposits are supported by the law. The parties do not dispute that Bradly Kovarik's name was on the certificate of deposit together with his sister's name or that neither of his parents' names were on the certificates of deposit. It is presumed that a certificate of deposit belongs to the person whose name appears on the certificate. 9 C.J.S. *Banks and Banking* § 310 (2008); *see also Estate of Casey*, 155 Ill.App.3d 116, 107 Ill.Dec. 809, 507 N.E.2d 962, 967 (App.1987). This presumption is supported by North Dakota case law. In *Estate of Paulson*, 219

N.W.2d 132, 136 (N.D.1974), a case involving stock certificates, we explained, "[w]hen the new stock certificates were issued in the names of the decedent and her children as joint tenants, they became co-owners of the stock." *Id.* at 136. In *Estate of Paulson,* we explained that "the decedent surrendered his exclusive right to the several items when he voluntarily placed ownership in himself and others. The rights of the co-owners were equal to his own and by the transfer of his funds into joint-tenancy obligations he gave up exclusive dominion and control." *Id.* Likewise, in this case, Bradly Kovarik's parents gave up their exclusive dominion and control over their assets when they placed the money in certificates of deposit in their children's names. *See Holloway v. Wachovia Bank & Trust Co.,* 333 N.C. 94, 423 S.E.2d 752, 756 (1992) ("The transfer of the account into the certificate was the vital element in this transaction. It showed the executed purpose to give. The certificate spoke for itself; it asserted on its face that the donee was the owner of the deposited money."). The act of placing the certificates of deposit in Bradly Kovarik's and Wanda Morstad's names evidences their parents' intent to give them the certificates of deposit and relinquish all control. *See id.* at 755–56 (holding a donor clearly expressed his intent to give the donee the certificate of deposit when the donor placed the certificate of deposit in the donee's name, even though the donor retained physical possession of the certificate of deposit and kept his name on the certificate as an agent for the donee).

[¶ 32] Although *Estate of Paulson* is more recent and provides direct guidance to this case, the Majority declines to analyze it. Instead, the Majority relies entirely on *McGillivray v. First Nat'l Bank,* 56 N.D. 152, 217 N.W. 150 (1927), for the proposition that there is no completed gift when the alleged donor retains possession

of the certificates. This case is unpersuasive and inapplicable to the facts at issue here. *McGillivray* involved an individual who placed certificates of deposit in her name and that of another individual. *McGillivray,* 217 N.W. at 151. Here, the parents did not place the certificates of deposit in their names and their children's names. Rather, the four certificates of deposit were placed solely in the names of "Wanda Morstad or Bradly Kovarik." Unlike the owner in *McGillivray* who left the certificates in her name, the parents in this case gave up their control over the certificates of deposit by not including their names on the certificates. This crucial difference makes the language of *McGillivray* inapplicable to the present case.

[¶ 33] Further, the Majority, at ¶ 16, merely states that the district court found Bradly Kovarik's parents did not intend to gift the certificates to him or his sister. The Majority does not explain that the district court came to that conclusion based on Bradly Kovarik's mother's testimony that she only put the certificates of deposit in her children's names to avoid taxes. Bradly Kovarik's mother testified their intent was to avoid paying taxes on their income by placing their property in their children's names, linking the certificates of deposit to one of their children's social security numbers, and then reimbursing their children for the taxes paid. She testified on direct examination:

> We just went and we made out a certificate and what we did was, we made it out in Wanda and Brad's name, with Wanda's social security number on it. And she paid the tax on it. Because they had more expense then [sic] we did. *I know it was an illegal thing to do. But that's what we did.* And then when they file their income tax and they found out what that amount of money would

cost them against their income tax, we wrote them a check out for it.

[¶ 34] Bradly Kovarik's mother was asked again to explain why the four certificates of deposit were in her children's names. She testified on redirect examination:

They [sic] explanation on that is because we didn't want to get the full tax on it. Where as Wanda and Randy have more expenses and stuff to get it written off and the taxes didn't cost us that much. It would have cost us more if we would have kept it all in our name, with our social security number on it. So we had her put it in hers. And when they made their income tax, their tax person figured out what that amount [of] money cost them in taxes and then we wrote them a check out for it.

[¶ 35] The parents may have engaged in fraudulent, illegal conduct, if in fact they failed to gift the certificates of deposit to their children and failed to pay any taxes on the proceeds of the sale of their farm machinery. The district court should not have allowed them to use their actions to their benefit. *See Erickson v. North Dakota State Fair Ass'n of Fargo*, 54 N.D. 830, 211 N.W. 597, 599 (1926) (holding courts will not aid parties engaged in illegal transactions, but will leave the parties where it finds them); *Drinkall v. Movius State Bank*, 11 N.D. 10, 88 N.W. 724, 727 (1901) (holding neither party to an illegal contract may be aided by the courts). Similarly, courts should not enforce agreements that violate public policy. *Meyer v. Hawkinson*, 2001 ND 78, ¶ 20, 626 N.W.2d 262. "Public policy is a principle of law whereby contracts will not be enforced if they have a tendency to be injurious to the public or against the public good." *Id.* "[W]hen a contract is inconsistent with fair and honorable dealing, contrary to sound policy, and offensive to good morals, the

courts have the authority to declare the contract void as against public policy." *Id.* Furthermore, N.D.C.C. § 9-08-02 provides, "All contracts which have for their object, directly or indirectly, the exempting of anyone from responsibility for that person's own fraud or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." This arrangement between Bradly Kovarik's parents and their children was created to evade their tax obligations to the government. Bradly Kovarik's parents' claim that they did not intend to gift the property to their children is only supported by the testimony that they undertook to avoid taxation and is contrary to public policy. Therefore, our Court should not aid parties engaged in such conduct.

[¶ 36] Because the record evidence conclusively establish that the parents of Bradly Kovarik intended to gift the certificates of deposit to their children by placing only Bradly Kovarik's and his sister's names on the certificates, I am of the opinion that the district court erred in concluding the parents did not intend to give their children the certificates of deposit.

### B

[¶ 37] The district court found the certificates of deposit were never delivered to Bradly Kovarik or his sister because the parents kept possession of the certificates of deposit. This finding is not supported by the record or our case law. Initially, the district court erred in concluding the parents kept possession of the certificates of deposit. The parents relinquished control of the certificates of deposit on four occasions between the commencement of the divorce and the divorce trial so Bradly Kovarik's sister could cash them. Bradly Kovarik acknowledges as much. In his

January 28, 2008, affidavit to the district court, he admits that his parents must have delivered the first certificate of deposit to his sister so she could cash it. He stated, "I am not sure of the balance of the CD, but I do know that my parents must have delivered it to her to withdraw." Delivery occurred when the parents gave the certificates of deposit to Bradly Kovarik's sister to cash.

[¶ 38] The Majority, at ¶ 16, concludes that, "[t]he record does not reflect donative intent or delivery of the certificates to Bradly Kovarik, either actual or constructive." The Majority appears to be implying that failure to deliver the certificates of deposit directly to Bradly Kovarik means that no delivery occurred. However, that is an erroneous view of the law. In *Estate of Paulson*, we explained that delivery to one co-owner is sufficient to constitute delivery to all co-owners. We held, *"Each of the co-owners has an equal right to possession of the evidence of title (passbook, note, certificate, etc.) and, since they cannot both have manual possession at the same time, possession by one is possession for the benefit of both." Estate of Paulson*, 219 N.W.2d at 136. We went on to explain that delivery by the donor to one of the joint owners constitutes delivery for the benefit of all. *Id.* The Court in *Paulson* relied on a South Dakota case, *Bunt v. Fairbanks*, 81 S.D. 255, 134 N.W.2d 1, 3 (1965), which is also applicable to these facts. It states:

Although donor retained possession of the certificate, he surrendered his exclusive dominion and control thereof when he had ownership placed in defendant and himself. Nothing more remained to be done to make the gift complete and absolute. It was irrevocable. Each co-owner had an equal right to possession of the certificate and since they could not both have manual possession at the same time, possession by one cotenant

is, in contemplation of law, possession for both.

[¶ 39] I believe *Paulson* is controlling. Therefore, Bradly Kovarik's parents' delivery of the certificate of deposit to Bradly Kovarik's sister constituted delivery to Bradly Kovarik. Again, the Majority declines to apply *Paulson* to this case and relies on *McGillivray* for its assertion that no delivery occurred in this case. However, *McGillivray* is also distinguishable on the issue of delivery. The donor in *McGillivray* never delivered the certificates of deposit. *McGillivray*, 217 N.W. at 151. When the donor died, the certificates of deposit were found in her safety deposit box. *Id.* This is unlike the present case in which Bradly Kovarik's mother delivered the certificates of deposit to Wanda Morstad on four separate occasions. Each time she brought Wanda Morstad the certificate, delivery of that certificate occurred, and, because Bradly Kovarik was a joint-owner, the certificate of deposit was also delivered to him. Thus, unlike the donor in *McGillivray*, Bradly Kovarik's parents divested themselves of the control of the certificates of deposit by first solely placing their children's names on the certificates of deposit and then delivering the certificates of deposit to Wanda Morstad to be cashed.

[¶ 40] Additionally, I am of the opinion that delivery occurred even before the parents delivered the certificates of deposit to Bradly Kovarik's sister. As the court in *Holloway* explained, "the evidentiary purpose of the formality of delivery is met when a certificate of deposit is made in a name other than the depositor's, as the courts can rely on the contract between the bank and the depositor, evidenced by the certificate, as proof of the gift." 423 S.E.2d at 757. Thus, even if Bradly Kovarik's parents had not delivered the cer-

tificates to Wanda Morstad, I believe delivery would have occurred. Nonetheless, there is no doubt that delivery was accomplished in this case by placing the certificates in the children's names and delivering the certificates to Wanda Morstad.

[¶ 41] Finally, I believe that Bradly Kovarik was entitled to one-half of the proceeds even though Wanda Morstad cashed out the certificates of deposit. When Bradly Kovarik's parents placed the certificate of deposit in the names of "Wanda Morstad or Bradly Kovarik," they did not include any words expressly stating that the ownership was designated as a joint tenancy. The failure to include express language creating a joint tenancy means that Bradly Kovarik and Wanda Morstad owned the certificates of deposit as tenants in common. *Compare* N.D.C.C. § 47–02–06 ("A joint interest is one owned by several persons in equal shares by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants.") *with* N.D.C.C. § 47–02–08 ("An interest in common is one owned by several persons not in joint ownership or partnership. Every interest created in favor of several persons in their own right is an interest in common, unless acquired by them in partnership for partnership purposes, or unless declared in its creation to be a joint tenancy."). North Dakota has statutorily expressed a preference for interests in common over joint interests. Because the interest created was that of a tenancy in common, Bradly Kovarik owned one-half of the value of the certificates of deposit. *See Boehm v. Harrington*, 54 Md.App. 345, 458 A.2d 885, 891 (Md.App. 1983) (holding that each of the co-tenants separately owned one-half of the total funds). As the court in *Boehm* explained, "Each [owner] was entitled to share with the other [owner] the right of ownership of

their individual one-half interest. If either died intestate, her undivided one-half interest would pass by operation of law to her own heirs. Each had a right to transfer her undivided one-half share by last will and testament to such person or persons as she chose." *Id.* Because Bradly Kovarik had a legal interest in one-half of the total value of the certificates of deposit, that amount should have been included in the marital estate for the district court to equitably divide.

### III

[¶ 42] In conclusion, I dissent because the certificates of deposit were completed gifts to Bradly Kovarik and must be included in the marital estate. I would reverse and remand to the district court for further proceedings to equitably distribute this marital property.

[¶ 43] MARY MUEHLEN MARING, J.