# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2020 ND 62

Clare Messmer,                                                          Plaintiff and Appellee

  v.

Robert Messmer,                                                    Defendant and Appellant

### No. 20190243

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable Rhonda R. Ehlis, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Jensen, Chief Justice, in which Justices VandeWalle, Crothers, and Tufte joined. Justice McEvers filed an opinion concurring in part and dissenting in part.

Thomas F. Murtha IV (argued) and Dennis W. Lindquist (appeared), Dickinson, ND, for plaintiff and appellee.

Jennifer M. Gooss, Beulah, ND, for defendant and appellant.

**Jensen, Chief Justice.**

[¶1]   Robert Messmer appeals from an amended divorce judgment and order granting a new trial. He argues the district court erred in the inclusion of 320 acres of property in the marital estate, the valuation and distribution of the parties' property, the denial of an award of spousal support, and the denial of an award of attorney fees. We affirm the district court's inclusion of the 320 acres in the marital estate, reverse the district court's valuation of the 320 acres, and remand the case for further proceedings consistent with this opinion.

I

[¶2]   Robert Messmer and Clare Messmer were married in 1984. During the marriage, Robert Messmer actively engaged in farming and ranching. Clare Messmer helped with the farming and ranching activities as well as working outside the home.

[¶3]   Clare Messmer initiated divorce proceedings on June 13, 2016. A trial was held on May 7, 2018, with a judgment entered on August 22, 2018.

[¶4]   On September 10, 2018, Robert Messmer filed a motion for a new trial asserting an error had been made in the valuation of a wind turbine lease. On October 5, 2018, Clare Messmer filed a motion to amend the judgment to include 320 acres of land not included within the original property distribution. On November 7, 2018, the district court granted both of the motions after finding the parties had inadvertently failed to provide evidence of the value of the wind turbine lease during the first trial, finding the 320 acres should be included within the marital estate, and setting the valuation date for the 320 acres as the date of the subsequent second trial.

[¶5]   On appeal, Robert Messmer raises several challenges to the district court's findings. He asserts the court erred in finding a gift of a remainder interest in the 320 acres had been delivered to him and was includable in the

1

marital estate, and the court erred in using the second trial date as the date for valuing the 320 acres. He also challenges the court's distribution of marital property asserting the court failed to properly consider the conduct of the parties during the marriage, erred in ordering him to make an equalization payment to Clare Messmer, and erred in the valuation of mineral interests. Additionally, he challenges the denial of his request for spousal support and the denial of his request for attorney fees.

II

[¶6] Subsequent to the first trial, the parties discovered a remainder interest in 320 acres had been gifted to Robert Messmer by his mother who had retained a life estate in the property. Robert Messmer argues the district court erred when it included the 320 acres in the marital estate. Robert Messmer asserts that, at the time of the first trial, the conveyance from his mother was not a completed gift because he did not have physical possession of the deed and he was unaware of the transfer.

[¶7] After granting a divorce, the district court is required to value the parties' property and debts and "make an equitable distribution." N.D.C.C. § 14-05-24(1). Our standard of review for distribution of marital property is well established:

> This Court reviews a district court's distribution of marital property as a finding of fact, and will not reverse unless the findings are clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. We view the evidence in the light most favorable to the findings, and the district court's factual findings are presumptively correct.

*Adams v. Adams*, 2015 ND 112, ¶ 13, 863 N.W.2d 232 (internal citations and quotations omitted); *see also Holm v. Holm*, 2017 ND 96, ¶ 4, 893 N.W.2d 492.

[¶8] In order for an asset to be included within the marital estate, one or both of the parties must have a present property interest in the asset, rather than

2

a mere expectancy. *Paulson v. Paulson*, 2010 ND 100, ¶ 19, 783 N.W.2d 262 (citing 27B C.J.S. *Divorce* § 852 (2009)). Gifts may be included within the marital estate if the gift satisfies certain prerequisites:

> A district court may consider property to be part of the marital estate, if supported by evidence, even if a party claims it is owned by a nonparty. *Barth v. Barth*, 1999 ND 91, ¶ 8, 593 N.W.2d 359. "The principles applicable to inter vivos gifts in general apply as well to purported gifts of certificates of deposit." 38 Am.Jur.2d *Gifts* § 67 (1999). A valid gift made during the donor's lifetime must satisfy certain requirements—donative intent, delivery, actual or constructive, and acceptance by donee. *Makedonsky v. North Dakota Dep't of Human Servs.*, 2008 ND 49, ¶ 11, 746 N.W.2d 185. ("A valid gift requires an intention by the donor to then and there give the property to the donee, coupled with an actual or constructive delivery of the property to the donee and acceptance of the property by the donee.") A donor's intent is a question of fact. *Doeden v. Stubstad*, 2008 ND 165, ¶ 12, 755 N.W.2d 859. The actual or constructive delivery must be "of a nature sufficient to divest the owner of all dominion over the property and to invest the donee therewith." *In re Kaspari's Estate*, 71 N.W.2d 558, 567 (N.D. 1955).

*Kovarik v. Kovarik*, 2009 ND 82, ¶ 13, 765 N.W.2d 511.

[¶9] In support of her motion for a new trial, Clare Messmer cited *Dinius v. Dinius*, for the proposition that there was constructive delivery of the deed because Robert Messmer's mother had recorded it. 448 N.W.2d 210 (N.D. 1989). In *Dinius*, we affirmed a finding that deeds were delivered when the parties were in control of real property, the deeds were recorded, but the deeds were not physically delivered. *Id*. at 215-17. Whether there was actual or constructive delivery of a deed is a finding of fact. *Id*. at 216.

[¶10] The district court found, and Robert Messmer has not challenged, that the deed was filed by Robert Messmer's mother with the county recorder before the parties' separation. The court further found that neither party was aware of the transfer until after the first trial. Finally, the court found Robert

3

Messmer's mother had passed away between the date of the first trial and the date of the second trial.

[¶11] A conveyance by deed takes effect upon the delivery of the deed by the grantor. *CUNA Mortg. v. Aafedt*, 459 N.W.2d 801, 803-04 (N.D. 1990) (citing *Frederick v. Frederick*, 178 N.W.2d 834, 837 (N.D. 1970); N.D.C.C. § 47-09-06). A presumption of constructive delivery arose when Robert Messmer's mother filed the deed with the county recorder divesting herself of the remainder interest in the property. *Dinius*, 448 N.W.2d 210. "The recording of a deed may create a rebuttable presumption of its delivery to, and its acceptance by, the grantee." *CUNA Mortg.,* at 804. The presumption of acceptance following the recording of a deed only arises when the deed is beneficial to the grantee. *Id.*

[¶12] Failure to renounce a deed after learning of its existence may be sufficient to show a grantee accepted the deed. *CUNA Mortg.*, 459 N.W.2d 801 at 804. To rebut a presumption of delivery arising from the recording of a deed, the opposing party must provide clear and convincing evidence. *Eide v. Tveter*, 143 F.Supp. 665, 669 (D.N.D. 1956).

[¶13] The specific issue of whether the 320 acres should be included within the marital estate was raised below and contested in the district court. Robert Messmer has not challenged the court's finding the deed had been filed prior to the parties' separation. The filing creates a presumption of both delivery and acceptance occurring at the time the deed was filed. The presumption requires clear and convincing evidence to rebut. Robert Messmer offered no evidence to rebut the presumption of delivery and acceptance. Although the court found that neither party knew about the deed prior to the entry of the first judgment, Robert Messmer did not provide evidence, or even assert, he had renounced the gift during the post-trial motion or the second trial. Robert Messmer's only argument in the court below, and on appeal, is that delivery did not occur because he was not physically given the deed and he was unaware of the transfer. Under these circumstances, after having determined the deed had been recorded and in the absence of any evidence of renunciation, the court did not err in including Robert Messmer's remainder interest in the 320 acres in the marital estate.

## III

[¶14] Robert Messmer also challenged the district court's valuation of the 320 acres at the time of the second trial, arguing the property should have been valued as a remainder interest on May 18, 2018, the date of the parties' first trial. The court, in its order granting the motion to reopen the case subsequent to the first judgment, found the appropriate valuation date to be the date of the second trial. The court declined "to value the land as a remainder interest as the current value should be the value of the property with Robert being the owner of the land in its entirety." In finding the appropriate valuation date to be the date of the second trial, the court relied on its finding "Robert is the owner of this property, with no further restrictions . . . [b]oth parties have an interest in this Court properly dividing all assets of the marriage, and distributing those assets in an equitable manner." The court thereafter valued the 320 acres as of the date of the second trial.

[¶15] Valuation of the marital estate is governed by N.D.C.C. § 14-05-24(1) which reads as follows:

> When a divorce is granted, the court shall make an equitable distribution of the property and debts of the parties. Except as may be required by federal law for specific property, and subject to the power of the court to determine a date that is just and equitable, the valuation date for marital property is the date mutually agreed upon between the parties. If the parties do not mutually agree upon a valuation date, the valuation date for marital property is the date of service of a summons in an action for divorce or separation or the date on which the parties last separated, whichever occurs first.

The statute is unambiguous. It does not provide the district court with discretion when the parties do not agree upon a valuation date. In the absence of an agreement, the statute requires valuation of the marital estate as of the date of service of a summons or the date on which the parties last separated, whichever occurs first.

5

[¶16] The second sentence of N.D.C.C. § 14-05-24(1) reads: "[e]xcept as may be required by federal law for specific property, and subject to the power of the court to determine a date that is just and equitable, the valuation date for marital property is the date mutually agreed upon between the parties." That sentence requires the district court to use the valuation date agreed upon by the parties unless the court determines the agreement would not be just and equitable.

[¶17] The third sentence of N.D.C.C. § 14-05-24(1) reads: "[i]f the parties do not mutually agree upon a valuation date, the valuation date for marital property is the date of service of a summons in an action for divorce or separation or the date on which the parties last separated, whichever occurs first." That sentence does not include any directive to the district court to exercise its discretion, but instructs the court, in the absence of an agreement between the parties, to value the marital property on the date of service of a summons or the date the parties last separated, whichever occurs first.

[¶18] Reading district court discretion into the third sentence and allowing the court to exercise its discretion in the absence of an agreement would render the legislature's directives meaningless. There would be no circumstances under which the court would not have discretion. Regardless of this Court's preference regarding district court discretion in selecting an equitable date for valuing a marital estate, "the letter of it [the law] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1-02-05.

[¶19] Through the enactment of N.D.C.C. § 14-05-24(1), the legislature has provided a definitive process for determining the date to value the marital estate that limits the district court's discretion to accepting or rejecting an agreed upon valuation date. The statute does not provide the court with discretion to select its own valuation date and the court misapplied the law by valuing the 320 acres at the date of the second trial.

[¶20] We have recently considered the district court's authority to revalue assets of a marital estate subsequent to trial in extraordinary circumstances. *Innis-Smith v. Smith*, 2018 ND 34, 905 N.W.2d 914. In *Innis-Smith*, this Court

6

reversed a district court's decision not to allow a case to be reopened because of a change in the value of an asset two years subsequent to trial. *Id*. at ¶ 19. We held reconsideration of a property division may be appropriate in an extraordinary case "when a substantial, unanticipated change in valuation of an asset occurs after trial but before distribution." *Id*. (quoting *Grinaker v. Grinaker*, 553 N.W.2d 204, 209 (N.D. 1996)). That decision seems inapposite to a strict application of N.D.C.C. § 14-05-24(1) which became effective August 1, 2017. However, we were not asked to consider the application of N.D.C.C. § 14-05-24(1) in *Innis-Smith*, all of the relevant events except the issuance of our opinion in *Innis-Smith* occurred prior to the effective date of the statute, and we have not been requested by either party to reconcile that case with the present case. Consideration of whether our decision in *Innis-Smith* can, or needs to be, reconciled with N.D.C.C. § 14-05-24(1) is unnecessary in this case.

IV

[¶21] On appeal, Robert Messmer raises several other issues related to the district court's allocation of the marital estate including the following: asserting the factual findings regarding the conduct of the parties during the marriage were clearly erroneous or incomplete, challenging the award of an equalization payment from Robert Messmer to Clare Messmer, challenging the manner in which certain parcels of real property were allocated, and challenging the manner in which mineral interests were allocated. He also argues the court erred by denying his request for spousal support and attorney fees. Property division and spousal support issues are interrelated and intertwined, often must be considered together, and the court is not prevented from reconsideration and reallocation of both issues on remand. *Mertz v. Mertz*, 2015 ND 13, ¶ 27, 858 N.W.2d 292. Because the remaining issues are interrelated and intertwined with the valuation of the 320 acres, it is unnecessary to address those issues on this appeal.

7

[¶22] We affirm the district court's inclusion of the 320 acres in the marital estate. We reverse the district court's use of the second trial date as the valuation date for the 320 acres and remand for use of a valuation date consistent with N.D.C.C. § 14-05-24(1). Resolution of the remaining issues raised by Robert Messmer on appeal are unnecessary in light of the remand to the district court.

[¶23] Jon J. Jensen, C.J.
Jerod E. Tufte
Daniel J. Crothers
Gerald W. VandeWalle

**McEvers, Justice, concurring in part and dissenting in part.**

[¶24] I concur with the majority in sections I, II, and IV, and respectfully dissent with the majority that N.D.C.C. § 14-05-24(1) is unambiguous.

[¶25] "On numerous occasions this Court has stated that statutes must be construed as a whole to determine the intent of the legislature and that the intent must be derived from the whole statute by taking and comparing every part thereof together." *State v. Mees*, 272 N.W.2d 61, 64 (N.D. 1978). A statute is ambiguous if it can produce more than one meaning and absurd results. *Id.* Under N.D.C.C. § 1-02-39:

> If a statute is ambiguous, the court, in determining the intention of the legislation, may consider among other matters:
> 1. The object sought to be attained.
> 2. The circumstances under which the statute was enacted.
> 3. The legislative history.
> 4. The common law or former statutory provisions, including laws upon the same or similar subjects.
> 5. The consequences of a particular construction.
> 6. The administrative construction of the statute.
> 7. The preamble.

[¶26] Section 14-05-24(1), N.D.C.C., reads as follows:

When a divorce is granted, the court shall make an equitable distribution of the property and debts of the parties. Except as may be required by federal law for specific property, and subject to the power of the court to determine a date that is just and equitable, the valuation date for marital property is the date mutually agreed upon between the parties. If the parties do not mutually agree upon a valuation date, the valuation date for marital property is the date of service of a summons in an action for divorce or separation or the date on which the parties last separated, whichever occurs first.

[¶27] In breaking down N.D.C.C. § 14-05-24(1), it would be absurd to say courts will only have to follow the provision "[e]xcept as may be required by federal law" in the second sentence only if parties agree. If something is required by federal law, the parties will have to follow it whether they agree to a valuation date or not. It also seems absurd to me that the legislature intended to give the district court the power to do what is just and equitable only when the parties agree. I would suggest that the best time to give court discretion is when parties do not agree, and I think that is what the legislature intended.

[¶28] Based on the legislative history, it is clear that the intent was generally to move the valuation date earlier. *See Hearing on H.B. 1325 Before the House Judiciary Comm.,* 65th N.D. Legis. Sess. (Jan. 25, 2017) (testimony of Connie Triplett stating, "[t]he point of the bill is to move the valuation date up to three to six months after a divorce starts"). It also appears that the legislature was made aware that the courts would have to deal with property values decreasing over time through no fault of either party and it was argued the court should have discretion to deal with those situations and also to consider an exception for federal pension issues. *Id.* The House Standing Committee Minutes of the Judiciary Committee reflect the reasons for the proposed amendments to the bill:

*Chairman K. Koppelman*: Property might be inflated or decreased in value because of the time lapsing. It is fairest to value it at the earliest date possible. Do you think your language deals with this?

9

*Representative Klemin*: This clarifies the default date. If the parties agree on a date, why should anyone else decide differently. It is also subject to federal law relating to pensions that overrides everything. It is always up to the court.

[¶29] The dates in the statute were intended to be a default, but always leaving it up to the court. I invite the legislature to reconsider the need of courts to have the discretion necessary to make an equitable division of property based on the realities of the case before the court.

[¶30] Lisa Fair McEvers